(49 Misc. Rep. 171)

### DE LIMA v. MITCHELL et al.

(Supreme Court, Special Term, Westchester County. January, 1906.)

1. COVENANTS—USE OF PREMISES—BREACH.

Where certain lots were deeded to plaintiff and defendant from a common owner with covenants that they should not be used for barrooms, saloons, or for any business purpose whatsoever, the covenant is broken by the use of a building on defendant's land for a restuarant and drinking saloon, and such use should be enjoined where there has been no such change in the general neighborhood since the property was bought by defendant as would make such enforcement inequitable.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Covenants, § 169; vol. 27, Cent. Dig. Injunction, §§ 124, 125.]

2. INJUNCTION—BREACH OF COVENANTS—ACQUIESCENCE.

Where lots were sold by a common owner with restrictions against their use for business purposes or for saloons, but there have been infrequent violations of said covenant, not generally known or acquiesced in by plaintiff or other residents of the district, will not prevent an enforcement of such restriction.

3. SAME.

> Where lots are sold by a common owner with covenants restrictive of their use for business purposes, or for saloons, a purchaser of one lot is entitled to restrain the use of a neighboring lot as a saloon, as against the interest of a subsequent mortgagee of such lot.
>
> [Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 124.]

Action by Elias S. A. De Lima against Harriet E. Mitchell and others to restrain the use of certain premises as a saloon. Judgment for plaintiffs.

Lewis L. Delafield (Carsten Wendt, of counsel), for plaintiff.
Henry T. Dykeman, for defendant.

BURR, J. The plaintiff and the defendant Harriet E. Mitchell are respectively owners of plots of land with buildings erected thereon, situated in the village of Larchmont. The plaintiff acquired title to his land in the spring of 1902, and thereafter erected a dwelling house thereon which he occupies with his family. The defendant Mitchell acquired title to her land in October, 1887. At that time there were two small buildings on the property. Subsequently she erected two additional buildings, one of considerable size.

In the deeds to plaintiff and defendant, respectively, were restrictive covenants which, among other things, provided that the premises owned by them should not be used nor occupied for certain specified purposes. Among other things, they could not be used for a "bar-room, lager beer saloon, restaurant, ale house, liquor saloon, store, warehouse, or any erections known as nuisances, or any noxious or dangerous use, purpose, trade, business, or establishment, or for any business purpose whatsoever." Covenants the same, or very similar, in form were included in very many of the deeds conveying lots or parcels of land contiguous to that in question. All the grantees claimed through a common source of title, and the effect was to establish a general restriction over a large tract of land familarly known as "The Larchmont Manor Tract." Down to about June, 1905, the defendant had used the premises owned by her for a private hotel or boarding house for the entertainment of gentlemen and their families, who desired to spend the heated term in the country. The large majority of the patrons of the house were permanent guests, who not only lodged and took their meals there, but remained for a considerable period of time. In addition to the house kept by the defendant, three similar establishments were kept and maintained upon the restricted tract.

The covenant above referred to has received judicial construction. Murray v. Charman, 23 App. Div. 626, 48 N. Y. Supp. 1110. In that case, the court held that the maintenance of a private hotel or boarding house in which the furnishing of food and liquor to its guests, to be served with their meals or in their private rooms, was only incidental to the principal business there carried on, and was not a violation of the covenants in question. In June, 1905, in one of the buildings upon defendants' premises, a decided change in the manner of conducting the business took place. This building, known as "The Mitchell House Annex," was fitted up and equipped so as to be complete in itself. It was conducted almost entirely indepedently of the main house. It had no

facilities for entertaining guests permanently, or affording them lodgings even for a single night. It was conducted, openly and notoriously, as a place where any respectable person might obtain food and liquor, or food without liquor, or liquor without food; and this without regard to whether such person was a guest of the main house, or a resident of the place, or not. This was not only the principal, but the only business that was there carried on. It was, to all intents and purposes, a restaurant and drinking saloon, and nothing else.

Both as an original question, and in view of the decision above referred to construing this covenant, I have no hesitation in holding that such use was a clear violation of the covenant in question, and should be enjoined; unless the plaintiff, has in some way, lost the benefit of the said covenant and the right to enforce the same. There has been no such change in the general character of the neighborhood since the defendant acquired her property as would make it inequitable to enforce the same. On the contrary, the change has been in the direction of making the surrounding territory more and more a residential neighborhood, improved with expensive dwellings, and occupied by people of wealth and refinement. If there have been some violations of the covenant in question, they have not been so general in character, neithei has there been such general acquiescence therein by the plaintiff or others residing within the restricted territory, as would prevent an enforcement of the same.

Proof of the existence of hotels or boarding houses of the character above referred to does not establish a breach of such covenant. Murray v. Charman, supra. If, occasionally, at these places food and liquor have been sold to other than the permanent guests of the house, it was generally to residents of Larchmont, whose houses were temporarily closed and, even then, so rarely that such use of the property may be termed incidental, and not general. Some evidence was also introduced of acts committed at some of these houses, particularly in the sale of liquor to strangers, which were undoubtedly violations of the covenant. The evidence would indicate that such violations, particularly at the Manor House, were far more frequent before the defendant purchased her property than since; and it is conceded that, for 10 or 12 years, there have been no violations of the covenant at the place in question, which has ceased to be used for anything, but strictly private purposes. The use of its property by the Hoboken Turtle Club, if it could be deemed a violation of the covenant, has long since ceased. The furnishing of food and liquor by the Larchmont Yacht Club and the occasional giving of entertainments by it to its own members and their invited guests, and restricted to them, is entirely different from creating a place for the sale to all persons indiscriminately. If this could be deemed a technical violation of the covenants, it is of such a character that the plaintiff could, in his discretion, take no notice of it without losing his right to enjoin the carrying on of such a business as the defendant Mitchell permitted.

In order to have the benefit of restrictive covenants, it is not necessary that the plaintiff should take notice of every violation thereof. He may take no notice of violations not especially offensive to him

without losing his right to enforce the restrictions in the case of especially offensive violations. Levy v. Halycon Casino Hotel Co., 45 Misc. Rep. 289, 92 N. Y. Supp. 231; Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182. The plaintiff is quite right in his position that, to permit the defendant Mitchell, either herself or through her representatives and persons claiming under her, to conduct such a place of business as was carried on in the Mitchell House Annex would speedily result in destroying the secluded and residential character of the neighborhood, which it was the purpose and object of the covenantors to secure and maintain. Neither is the plaintiff estopped by reason of his own acts or those of other residents of the Larchmont Manor tract from maintaining this action. If all of the evidence as to the sales of food and liquor indiscriminately at the old Manor House was accepted as true, such sales were discontinued shortly after the defendant Mitchell acquired her property, and long before the plaintiff acquired his.

It does not appear that the defendant Mitchell knew of such general selling, or that she was induced to purchase her property in the belief that she could there conduct such a business; and her management of the property purchased by her, for a period of nearly 18 years after she acquired the same, would indicate that she did not suppose that she could use it for any purpose except that of a private hotel and boarding house. As has been before suggested, such sales as took place at the other places referred to, were generally more or less secret and quite infrequent. Acquiescence presupposes knowledge, and there is no sufficient evidence that the breaches of the covenant thus committed were generally known. So with rgard to the other things which defendant claimed constituted the carrying on of a business, they were either intended to promote the general purpose of making the territory in question a desirable residential district, such as furnishing light, water, and street railway transportation, or, like the garage, the carpenter shop and the blacksmith's shop, were either of so trifling a character, or situated so near the boundary line of the restricted territory, that the persons interested might take notice of them or not as they chose.

The protest against the particular use of the defendant's property which began in June, 1905, was promptly and sincerely made, and her continued use of the property after that time was in the face of and notwithstanding such protest. The plaintiff is therefore entitled to a judgment against the defendant Harriet E. Mitchell, perpetually enjoining and restraining her and her servants, agents, and all persons claiming through or under her, from carrying on upon the premises owned by her the business of a restaurant, or saloon for the sale of intoxicating liquors, or from carrying on upon the said premises the business of furnishing and selling to persons indiscriminately food or liquor, or from furnishing or selling to any person either food or liquor, except to persons who are regular guests of a private hotel or boarding house carried on upon said premises, or their invited friends; such liquors to be served only to such guests with their meals or in their private rooms. The plaintiff is entitled to judgment against the defendant Dale, declaring that her right and interest as the mortgagee of said premises is subject to the said covenants and the right of the plaintiff

to enforce the same. As, during the pendency of this action, the right and interst of the defendant Ford in the said premises has terminated, affirmative relief will not be granted against him.

The plaintiff shall recover costs against the defendant Mitchell. Findings and judgment may be settled on notice.