## CLIFTON GEORGE CO. v. GREAT SOUTHERN LIFE INS. CO.    (No. 6610.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 26, 1921. Rehearing Denied Nov. 30, 1921.)

**Injunction ⬅=>62(3)—One knowingly permitting grantees to violate restrictions loses right to preserve them.**

Where a vendor sells off an estate in lots with restriction upon use of the lots sold, he will lose the right in equity to enforce his restriction against one grantee if he has knowingly permitted other grantees to violate the same restriction, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme to be conserved by it, and such rule is applicable where the suit is brought by a covenantee or by one of several grantees of land sold in accordance with the general scheme by the original covenantee.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Action by the Great Southern Life Insurance Company against the Clifton George Company. From an order granting a temporary injunction, defendant appeals. Affirmed.

T. F. Mangum, of San Antonio, for appellant.

W. W. King and H. P. Drought, both of San Antonio, for appellee.

FLY, C. J. This is an appeal from an order granting a temporary writ of injunction restraining appellant from entering upon certain property, being lot No. 4 in block No. 32, in Alamo Heights, Bexar county, Tex., and in any manner interfering with its use and possession by appellee or its tenants. The allegations of the petition of appellee are that it bought the land from the Equitable Life Insurance Company, which bought it from the vendor of appellant; that each of the deeds contained the following restrictions. or covenants:

"That the said vendee, its successors and assigns,

"First. Will not use the above-described premises, nor allow the same to be used for business pursuits other than for offices, hotels, boarding houses, lodging houses, or offices for insurance or other companies.

"Second. Will not sell to or lease to negroes.

"Third. Will not use the above-described property, nor allow the same to be used for keeping or treating for profit persons afflicted with tuberculosis or diseases contagious or infectious.

"Fourth. Will not use the above-described premises, nor allow the same to be used for the purpose of selling, bartering or dealing in any spirituous, vinous or malt liquors or other intoxicating liquors.

"Fifth. Will not use the above-described premises, nor allow the same to be used, leased, or occupied by any person or persons, for the purpose of erecting tent or open-air structures thereon, or barns or sheds for living purposes, except that outbuildings may be occupied by servants of owner or lessee."

It was admitted that appellee had leased the property to Charles J. Lukin, to be used as a place of residence and boarding school. Appellant claimed that such use was in violation of the covenants in the deed.

We adopt the following findings of fact filed by the trial judge:

"The plaintiff company acquired said property by deed from the Equitable Life Insurance Company dated on the 11th day of November, 1915, for a consideration of $20,000 paid, which deed was duly recorded in deed records of Bexar county, Tex., and containing the same restrictions mentioned in the foregoing deed.

"The plaintiff company entered into possession of said property on the date of its purchase, and thereafter, on or about the 1st day of July, 1917, leased, in writing, the same to Charles J. Lukin for a period of one year, for the purpose of operating and maintaining a boarding school, and the said lease was renewed annually thereafter up to the 30th day of June, 1921; and during all of said time the said lessee has been in possession thereof operating and maintaining a boarding school for boys.

"The said lease was made by the plaintiff company to its lessee for school purposes and was so used by the said lessee for said purpose, and is now being used for that purpose. And the use to which said property was and is devoted was then and is now known to the defendant company.

"During the summer of 1917 plaintiff company's lessee, in ignorance of any objection by defendant company, erected upon said premises under contract with his lessor a large classroom built of cement and tile at a cost of $1,500, and the erection of said building and the use and purposes to which it was to be devoted was known to the defendant company.

"The restrictions embodied in the plaintiff company's deed, as well as those in the deed of its vendor, were placed in said deeds in pursuance of a general plan of the Alamo Heights subdivision as a residential addition.

"On various and sundry dates between 1912 and the date when the plaintiff company purchased the property the Alamo Heights Company and the Clifton George Company, its successor in title, conveyed about 25 acres in said addition to the bishop of the diocese for school purposes, and also conveyed a tract of land out of said addition containing about 2 acres to the school trustees for the purpose of maintaining a public school thereon, and another lot for school purposes to Mrs. Eloise Polk McGill, and that each of the properties aforesaid has been constantly used and is now being used for school purposes, and the same was conveyed by the defendant company for that purpose, and the use of said property for school purposes was known to the defendant company.

---

⬅=>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Defendant company and its vendor, the Alamo Heights Company, sold and conveyed a certain lot in said addition for the use of a grocery store, and another lot in said addition for a grocery store and butcher shop, and on each of said lots a grocery store and butcher shop has been erected for the use of a grocery store and butcher shop, and both are being used for those purposes, and another lot was sold and conveyed in said addition for a drug store, upon which a building is now being erected for that purpose, and a drug store will be therein conducted, all of which was and is known to the defendant company.

"On or about the 5th day of August, 1915, the Alamo Heights Company conveyed to the defendant company, by deed duly recorded, about 700 lots located in various parts of said addition, wherein restriction No. 1, copied in paragraph 1 hereof, is entirely omitted, whereby said lots were released from said restriction.

"Defendant company made no objections to the plaintiff company or its lessee using said property for school purposes, or asserted any right that said use was in violation of said restriction until two years after said use had begun, and two years after the classroom building had been erected.

"Plaintiff company's lessee is now, and has been since the summer of 1917, conducting a high-class boarding school for boys on the property in controversy, and the same has been conducted and operated in an orderly manner, and that said school is a benefit to said addition and has not depreciated the value of property in said addition, and said school has been an inducement in the sale of property for resident purposes in said addition."

If the deeds held by appellee had prohibited the use of the property for boarding school purposes, the acts of appellant in sitting by and seeing the property improved and used for school purposes and in selling other lots for "school purposes, as well as for business purposes, would estop it from claiming a forfeiture as against appellee."

"The recognized doctrine is that, where a vendor sells off an estate in lots, with restrictions upon the use of the lots sold, he will lose his right in equity to enforce the restrictions against one grantee if he has knowingly permitted other grantees to violate the same restrictions, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme to be conserved by it. The rule is applicable whether the suit is brought by the covenantee or by one of several grantees of land sold in accordance with the general scheme by the original covenantee. It rests upon the equitable ground that, if any one who has a right to enforce the covenant and so preserve the conditions which the covenant was designed to keep unaltered shall acquiesce in material alterations of those conditions, he cannot thereafter ask a court of equity to assist him in preserving them." Devlin, Real Property, § 991; Ocean City Association v. Chalfant, 65 N. J. Eq. 156, 55 Atl. 801, 1 Ann. Cas. 601.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes