### TEXAS AUTO CO. et al. v. ARBETTER et al.
### (No. 7843.)

Court of Civil Appeals of Texas. San Antonio.
Nov. 23, 1927.

Rehearing Denied Jan. 4, 1928.

**I. Vendor and purchaser ⬮➡130(2)—Specific performance would not be decreed against purchasers, if there was reasonable doubt whether title was marketable according to contract.**

Specific performance of contract to purchase real estate would not be decreed against purchasers, if there was reasonable doubt as to whether vendor's title was marketable according to contract.

**2. Vendor and purchaser ⬮➡130(2)—"Marketable title" means one reasonably free from doubt affecting market value.**

"Marketable title," as applied to real property, means one reasonably free from doubt, which would affect its market value, and title is not marketable, if there is reasonable chance that third person may question it, or, frequently, if parol proof is necessary to remove doubts, or if competent persons might well differ (citing Words and Phrases, "Marketable Title").

**3. Specific performance ⬮➡123—Whether title is marketable is for court.**

Question whether vendor is tendering marketable title is for court, and not for jury, although jury may find facts, unless they are undisputed.

**4. Corporations ⬮➡316(1)—Where director's vote is necessary to resolution authorizing contract between corporation and himself, especially purchase of corporate assets, authorization is voidable.**

Where vote of director of corporation is necessary to passage of resolution authorizing contract between corporation and himself, especially purchase of corporate assets, authorization is sometimes void, and always voidable, at instance of corporation, stockholders, or injured creditors.

**5. Corporations ⬮➡316(1)—Where director's vote is necessary to resolution authorizing contract between corporation and himself, contract is presumptively invalid, and those claiming under it have burden of showing entire fairness.**

Where vote of director of corporation is necessary to passage of resolution authorizing contract between corporation and himself, especially purchase of corporate assets by him, contract is presumptively invalid, and those claiming under it have burden of showing that it was openly and fairly made for adequate consideration, and that corporation was adequately represented by other officers or directors.

**6. Corporations ⬮➡410, 444—Corporate officer derives authority to sell realty from corporation and authority to execute conveyance from statute (Rev. St. 1911, art. 1173).**

Officer of corporation derives his authority to sell real property from charter and governing board of corporation, but his power to ex-
ecute deeds of conveyance from Rev. St. 1911, art. 1173.

**7. Corporations ⬮➡432(4)—Generally, execution of conveyance by proper officer and impression of corporate seal raises rebuttable presumption that instrument and sale were authorized (Rev. St. 1911, art. 1173).**

Generally, execution of conveyance by proper officer of corporation and impression of corporate seal thereon raises rebuttable presumption, not only that execution of instrument was authorized by corporation, under Rev. St. 1911, art. 1173, but also that sale was authorized by it.

**8. Vendor and purchaser ⬮➡130(2)—"Good and sufficient title" is not necessarily "marketable title."**

Title may be "good and sufficient title," within contract of sale, and yet not "marketable title."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Good and Sufficient Title.]

**9. Specific performance ⬮➡121(11)—Evidence held to show that title was not marketable according to contract and to warrant refusal to require specific performance by purchasers.**

Evidence *held* to show that title tendered by vendor was not marketable, according to contract, by reason of questionable conveyance from corporation to director and to warrant refusal to require specific performance on part of purchasers.

**10. Corporations ⬮➡316(5)—Conveyance by corporation to director, if invalid, might be attacked by corporation, stockholders, and creditors.**

Conveyance of realty by corporation to director, if invalid, might be attacked by corporation, its stockholders, and its creditors.

**11. Specific performance ⬮➡121(11)—Purchasers might not be required to take land because lapse of six years had barred right of any one to object to questionable conveyance, where there was no showing but that some person could attack conveyance.**

Purchaser defending suit for specific performance might not be required to take land on ground that lapse of six years had barred right of any one to attack questionable conveyance in vendor's chain of title, where there was no showing but that there might be persons who could attack conveyance.

**12. Vendor and purchaser ⬮➡130(2)—Title is not "marketable title," if dependent on estoppel in pais, or if purchaser would be exposed to lawsuit with chance of losing it.**

Title is not "marketable title," if it is dependent on whether certain acts, conduct, or admissions amount to an estoppel in pais, or if purchaser would be exposed to a lawsuit with the least chance of losing it.

**13. Vendor and purchaser ⬮➡143—Purchasers defending suit for specific performance held not estopped to question vendor's title by offering property for sale, and not to have waived objection thereby.**

Purchasers defending suit for specific performance *held* not estopped to attack vendor's

title because they offered property for sale for two days *without effecting sale, and not to have* waived right to object to vendor's title because thereof, where during the two-day period they were ready, able, and willing to complete purchase, if objection to title was cured and rejected title only when vendor admitted inability to cure it.

**14. Specific performance ⊙⟹10(1)—Purchasers of two lots might not be compelled to take one only; contract not being severable.**

Purchasers of two city lots might not be specifically required to take one lot only, where vendor could not furnish marketable title to other, since contract was not severable.

**15. Interest ⊙⟹11—Bank which held money as stakeholder, pending suit between claimants, and, when made party, pleaded willingness to pay, held not liable for interest.**

Bank which was mere stakeholder, and held money pending controversy and suit between claimants, and, when made party to suit, pleaded willingness to pay it over to party adjudged to be entitled thereto, *held* not liable for interest on money.

**16. Interpleader ⊙⟹35—Bank which held money as stakeholder pending suit between claimants, and, when made party, pleaded willingness to pay, held not liable for costs.**

Bank which was mere stakeholder, and held money pending controversy and suit between claimants, and, when made party to suit, pleaded willingness to pay it over to party adjudged to be entitled thereto, *held* not liable for costs.

**17. Interpleader ⊙⟹35—Bank which held money as stakeholder pending suit between claimants, and, when made party, pleaded willingness to pay, held entitled to attorney's fees on proper showing.**

Bank which was mere stakeholder, and held money pending controversy and suit between claimants, and, when made party to suit, pleaded willingness to pay it over to party adjudged to be entitled thereto, *held* entitled to recover attorney's fees on making proper showing.

**18. Appeal and error ⊙⟹757(3)—Denial of attorney's fees to stakeholder held not error, where briefs pointed out no evidence to sustain judgment therefor.**

Denial of attorney's fees to stakeholder *held* not shown to be error, where no evidence was pointed out in briefs on which judgment could be rendered for attorney's fees.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit for specific performance by the Texas Auto Company against I. Arbetter and another, who asked for affirmative relief against plaintiff and another. Judgment in favor of the defendants named in the original suit, and plaintiff and another appeal. Reformed, and, as reformed, affirmed.

E. B. Ward and S. E. Dyer, both of Corpus Christi, and R. L. Ball, of San Antonio, for appellants.

Boone & Savage and Felix A. Raymer, all of Corpus Christi, for appellees.

SMITH, J. I. Arbetter and D. Zweig entered into a contract with Texas Auto Company whereby they agreed to purchase from the latter two business lots in the city of Corpus Christi, upon condition that the Auto Company furnish them an abstract "showing a marketable title" in the company to the property. The abstract was furnished the proposed purchasers within the time prescribed in the contract, was examined by the attorney for the purchasers, who refused to complete the purchase on account of objections to the title. The auto company brought this suit to enforce specific performance, and Arbetter and Zweig reconvened to recover earnest money which they had placed in escrow in the City National Bank. The latter pleaded that it was a mere stakeholder, and prayed for judgment for its costs and attorney's fees. Trial resulted in a directed verdict in favor of Arbetter and Zweig against the auto company and the bank for the earnest money, with interest from the date of the rejection of the title. The auto company has appealed on the whole case, and the bank as to the decree adjudging interest against it and the denial to it of recovery for attorney's fees. The parties will be hereinafter designated as the seller, the purchaser, and the bank.

The chief objection to the title shown in the abstract was directed at a deed by which one of the lots was conveyed by the Freeborn-Sherman Development Company, a remote vendor in the chain of title to the seller, to H. G. Sherman. It was disclosed in the abstract that the Freeborn-Sherman Development Company was a Texas corporation, of which S. A. Freeborn, A. Fred Cole, and H. G. Sherman were the only directors, as well as its president, vice president, and secretary-treasurer, respectively. The deed from the corporation to Sherman, who was. its corporate secretary-treasurer, was executed by Cole, the vice president, and contained the recitation that it was so executed "by its vice president, authorized to act in the absence of the president and *the president being absent.*" The deed bore the imprint of the corporate seal, and was attested by its secretary, H. G. Sherman, the vendee.

The consideration for the conveyance was recited therein to be "$5, together with other *good and valuable consideration to it moving.*" Summarizing, it was disclosed in the abstract that valuable real estate belonging to the corporation was conveyed by its vice president (who was one of the three directors) for $5 and other but undisclosed consideration, to its secretary (another director), in the absence of its president (the third and only other director). From this statement

arises the question to be here decided, Did the abstract, disclosing these facts, unexplained, show such "marketable title" in the seller as to entitle him to a decree for specific performance of the contract of sale and purchase?

It was provided in the contract of sale that the seller would furnish the purchaser with abstract of title within ten days, which was done; that within the next ten days the title should be examined, and objections, if any, pointed out to the seller; and that within ten days thereafter the deal should be closed, and the consideration paid to the seller, or the title rejected and the earnest money returned to the purchaser. No provision was made in the contract for the curing of objections to the title, if any should be disclosed in the examination thereof, but the seller nevertheless sought to cure the defects pointed out, and did in fact remedy some of them. Time was made the essence of the contract, but both parties seem to have waived this provision to the extent that the purchaser withheld rejection of the title and a demand for his earnest money, and the seller continued his efforts to cure the objections to the title, during a period of several days after the expiration of the time fixed for completing the contract.

[1] The purchaser's written objections to the sufficiency and validity of the conveyance from the corporation to its secretary-treasurer, Sherman, was as follows:

"(1) No authority is shown for the making of such sale as this to H. G. Sherman.

"(2) Inasmuch as the abstract shows that H. G. Sherman was secretary of the corporation, and one of the directors at the time, in order to authorize a conveyance of this kind for the consideration recited therein to him, there must have been action taken by majority vote of the directors other than H. G. Sherman, and that action be evidenced by resolution, shown in the minutes of the directors of said corporation."

This objection was discussed at length between the parties and their counsel. The purchaser insisted that a written confirmation or ratification be obtained from Freeborn, the president of the corporation, whose absence at the time of the conveyance was disclosed by recitations in that instrument, and the seller undertook to conform to this requisition, but failed, and his failure resulted in the rejection by the purchaser. It was disclosed in the negotiations to obviate this objection to the title that Freeborn, Cole, and Sherman, who constituted the full directorate of the corporation at the time the conveyance was made, were still living, and were accessible. It was considered by the purchaser that Sherman, the beneficiary of the conveyance, was estopped to question the transaction, and no ratification was required of him. The seller obtained some sort of affidavit from Cole, the vice president, who

had executed the conveyance, but the purchaser demanded a written declaration from Freeborn, whose silence was regarded as ominous under the circumstances. The seller approached Freeborn, who flatly refused to put his hand to any writing upon the subject, and the purchaser, apprised of Freeborn's attitude, refused to proceed without such writing. It developed in these negotiations that the corporation had been, and still is, in difficulties; that the three directors were involved with each other in unsettled differences, which might result in conjectural reprisals among them. When confronted with all these conditions, the purchasers refused to proceed with the contract. If these conditions created a reasonable doubt of the marketability of the title, the purchaser was justified in refusing to proceed, and the courts will not compel him to complete the purchase.

[2, 3] The term "marketable title," when applied to real property, means one reasonably free from such doubt as would affect the market value of the estate; one which a prudent man with knowledge of all the facts and their legal bearing would be willing to accept (5 Words and Phrases, First Series, page 4388 et seq.); not doubts based on captious, frivolous, or astute niceties, made up for the occasion, but grave and reasonable doubts, such as would induce a prudent man to hesitate in accepting a title affected by them, and such as would make it possible or reasonably probable that the purchaser's right may become a matter of investigation, and thus affect its value. A marketable title is one that will bring as high a price in the market with the purchaser's objection to its sufficiency as without. 36 Cyc. 632; Maupin, Mark. Title, p. 705 et seq.; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979; Greer v. Stock Yards Co. (Tex. Civ. App.) 96 S. W. 79. Under the head of "marketable title" it is said in Cyc:

"In a suit by the vendor to enforce performance of a contract for the sale of land, the vendee will not be compelled to accept the title unless it is a marketable one; that is, one which will not expose him to litigation. To force upon the vendee a title which he may be compelled to defend in the courts is to impose upon him a hard bargain; and this a court of equity, in the exercise of its discretion, will refuse to do, irrespective of the question whether the title is actually good or bad."

And it is said by Mr. Maupin, citing indubitable authorities in support of the assertion, that, "if there be any reasonable chance that some third person may raise a question against the owner of the estate, after the completion of the contract, the title will be deemed unmarketable." Page 711. And again (pages 728, 729):

"It has been frequently held that, if parol evidence should be necessary to remove any doubt

as to the validity and sufficiency of the vendor's title, the purchaser cannot be compelled to complete the contract. He cannot be required to take a doubtful title which he must fortify, if impugned, by resorting to evidence perishable in its nature, and possibly unavailable to him when the necessity for it occurs. It must be observed, however, that a title is not necessarily doubtful simply because it requires to be supported by parol testimony. As a general rule, for example, title by inheritance depends principally upon matters in pais, or facts resting in the knowledge of witnesses. If those facts be clearly sufficient to establish the right of the vendor as heir, it is apprehended that the purchaser could not object to the title simply because it could not be established by record evidence. But a different case is presented where the fact of inheritance itself is in doubt. There may be circumstances to show that the ancestor is not dead, or that he has left a will, or that the vendor is not sole heir. Then it is that the title becomes unmarketable from the necessity of parol proof to remove the doubts which surround it. The court must determine in each case whether the circumstances alleged are sufficient to create a reasonable doubt as to the existence of the fact or facts upon which the validity of the title depends."

The question of whether a reasonable doubt exists as to the sufficiency or validity of the title is for the court, and not for the jury. The jury may find the facts, but the court must determine their effect. Of course, if the facts are undisputed, the whole responsibility and duty is upon the court, who must determine in each case whether the established facts are sufficient to create a reasonable doubt as to the sufficiency or validity of the title. If a doubt exists, and the court is of the opinion that another judge, or competent person, might well differ with him, then the title would be deemed so doubtful as to be "unmarketable." Maupin, pp. 710, 729, 750. Now in this case the parties, by their conduct of the trial, and by qualified requests for a peremptory instruction in the matter of the marketability of the title shown in the abstract, and by their presentation of the appeal, concede that in that branch of the case there were no issuable facts for the jury, and that the question was one solely for the court to determine. By this process we arrive at the duty of measuring the conveyance from the Freeborn-Sherman corporation to Sherman, its secretary, by the rules and definitions hereinbefore stated.

[4, 5] It is a wholesome and thoroughly settled rule that a director of a private corporation cannot vote, with propriety, in a matter affecting his private interest, any more than a judge can sit in his own case. He cannot, with propriety, deal in his own behalf in respect of the corporate property, or in respect of any matters involving the exercise of his duties as director. And, when he violates this rule of propriety, and enters into a contract with the corporation, especially a contract of purchase of corporate

assets, and his vote as a member of the board is necessary to the passage of the resolution authorizing it, this action of the board is sometimes void, and in all cases voidable, at the instance of the corporation, or of its stockholders, or of its injured creditors. Such contracts, when made with the efficient aid of the contracting director, are presumptively invalid, and the burden of showing that they are entirely fair is upon those claiming under them; and they will always be subjected by courts of equity to the severest scrutiny, and set aside, unless all appearance of bad faith is removed by evidence. The courts will refuse to set aside such contract when, and only when, it is made to appear that it was openly and fairly made for an adequate consideration, and the corporation was adequately represented by other officers or directors. 14a C. J. pp. 112, 113, § 1880; Thompson, Corp. (1st Ed.) §§ 4042, 4043, 4059, 4060–4063, 4070–4077, 5650, 8500, 8501; San Antonio St. Ry. Co. v. Adams, 87 Tex. 125, 26 S. W. 1040; Fitzhugh v. Land Co., 81 Tex. 306, 16 S. W. 1078; Nueces Valley Irr. Co. v. Davis (Tex. Civ. App.) 116 S. W. 633; Id., 103 Tex. 243, 126 S. W. 5; Greathouse v. Martin (Tex. Civ. App.) 91 S. W. 385; Id., 100 Tex. 99, 94 S. W. 323; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92.

With reference to the foregoing rule, the deed from the corporation to its director and secretary, and the circumstances and situation in which it was made to appear to appellees and their counsel, were such as to shroud the transaction with grave doubt and suspicion. The property conveyed out of the corporation to its officer and director must have been of considerable value at that time, for under the contract sought to be enforced in this suit the purchaser agreed to pay $75,000 for this and the adjoining lot. But in the conveyance now under discussion the specific consideration was only $5, plus "other valuable consideration," the nature and value of which was concealed in the instrument. On the face of the deed, the specific consideration was neither fair nor adequate, but was merely nominal, whereby the presumptive invalidity of the conveyance was pointedly emphasized. The suspicion imputed by law to the transaction was further enhanced by the fact that the three directors of the corporation in office at the time of the conveyance, still living, are unfriendly, are embroiled in financial, if not personal, controversies relating to the corporation, the affairs of which are involved in grave and uncertain difficulties. The then president of the corporation, who had no part in executing the conveyance, still refuses to join therein, or commit himself in writing to any affirmation or ratification of the conveyance, or bind himself against attacking or questioning its sufficiency or validity. The record is ominously silent upon the question of wheth-

er the corporation, whether acting through all three, or either two, of the directors, authorized the sale of the property to Sherman, the corporate director and secretary. If the sale was authorized by resolution, or by formal or informal vote of the directors, or any two of them, appellants wholly failed to furnish appellees with evidence thereof, so far as the record shows or either of the parties concede or contend. These facts, in connection with the recitation in the deed that Freeborn, the, at present, refractory president, was absent at the time of the execution of the deed in behalf of the corporation, go far to confirm a well-founded suspicion that the sale was made to the corporate director without the authority or knowledge of a majority of the board, exclusive of the benefiting director. These doubts may have no more force or dignity than mere surmises, but they are such as may be naturally and properly justified in a prudent person when about to enter upon the purchase of a title affected with such doubts.

[6, 7] The parties discuss the question of the extent of the presumed authority of the vice president to execute the deed in behalf of the corporation as bearing upon the question of the authorization of the sale. Undoubtedly, this authority to execute was implied from the act of execution and the impress of the corporate seal upon the instrument, under the provisions of article 1173, R. S. 1911, then in force. But there is a distinction between the authority of an officer to make a sale and his authority to execute the deed evidencing such sale. He derives his authority to sell from the powers granted him under the charter and by the governing board of the corporation; whereas his power to execute is derived from the statute. Fitzhugh v. Land Co., supra.

When the president, or, in his absence, the vice president, executes a conveyance duly sealed, his authority for the act will be implied from the statute, which is known of all men. But the authority for making the sale evidenced by the deed is derived from powers granted by the corporation, and, where that authority is questioned, recourse must be had to the books of the corporation, or parol proof of the corporate act of authorization.

This observation is prompted by the contention of appellant that the proper execution of the deed by the officer raised a presumption that the sale had been duly authorized by the corporation; and by the contention of appellees that this presumption does not exist, but that the authority for the sale must be evidenced by appropriate references in the face of the deed showing the antecedent authority. The question is not without its difficulties, and, in view of other conclusions in this opinion, its decision is perhaps not necessary in this appeal.

We think it may be said, generally, however, that the execution of a conveyance by the proper officer of a corporation, and the impression of the corporate seal thereon, creates a presumption that, not only the execution of the instrument by those officers, but the sale evidenced by that instrument, have been efficiently authorized by the corporation, which is bound thereby. Emory v. Bailey, 111 Tex. 337, 234 S. W. 660, 18 A. L. R. 901. But this presumption is rebuttable, as a matter of course.

[8] Under this presumption, a deed properly sealed, and executed by the proper officers, is admissible in evidence in a suit involving title to the property conveyed, and, in the absence of evidence of lack of corporate authority to make the sale, the conveyance will be held to pass title. But the question here is not one of a good and sufficient title, but of a "marketable" title, for a title may be good and sufficient, and yet not marketable.

[9] And, omitting consideration of the vendee's fiduciary relation to the vendor, the deed in question may be given the effect of passing title. But that conclusion does not, within itself, meet the purchaser's demand in this case, for evidence of the corporate authority to convey that title. The obvious fiduciary relationship of the vendee to the vendor, the absence of the director holding the balance of power between the two acting directors, the apparent inadequacy of the recited consideration for the conveyance, the information that the absent director now flatly refuses to confirm or ratify the conveyance, and that the corporate affairs are involved and unsettled, and that the directors have quarreled among themselves, and may seek reprisals—all these conditions raised doubts in the mind of the purchaser as to the sufficiency and validity of the conveyance, and the consequent effect upon the marketability of the title of the property involved. These doubts were intensified when it developed that the seller could not, would not, or did not, furnish any evidence that the doubts were not well founded; or that the sale was in fact authorized by the directors of the corporation, by resolution, acclamation, confirmation, ratification, or otherwise. The trial court found that these doubts were reasonable, and concluded that they were of sufficiently grave import as to affect the marketability of the title. We unhesitatingly concur in that finding and conclusion.

[10] Appellees contend that, even though the claimed defect in the title by reason of this conveyance once existed, the title was good, and has been freed of doubt by the lapse of time and the bar of limitation; that only the corporation and its stockholders could complain of the sale in question; and that whatever cause of action they had is now barred by the statutes of limitation, since nearly six years had elapsed between the date of the sale and the making of the

contract now sought to be enforced. It must be conceded, we think, that, if the conveyance was invalid, complaint thereof may be made by the corporation and its stockholders, and its creditors as well.

[11] And it is perhaps equally true that, if all causes of action which could arise from the transaction were certainly and clearly barred by the lapse of time, the purchaser would not be heard to say that he harbored reasonable doubts of the marketability of the title because of that transaction.

But it does not appear what interested persons were adversely affected by the sale, nor the character of their claims, nor their status with reference to disabilities of infancy, coverture, or otherwise, as to whose possible claims the purchaser would not be relieved of doubt until the extreme period of limitation had elapsed. Those persons, if any exist, are not parties to this litigation, and cannot be bound by any judgment rendered herein; and hence appellees, if compelled to complete their contract, might still be obliged to litigate with those claimants the question of title as against them.

[12] It is not sufficient to say that any such claimants, whether directors, stockholders, or creditors, or their heirs or assigns, are estopped by any circumstance to assert their claims, for "a title dependent upon the question whether certain acts, conduct or admissions amount to an estoppel in pais is unmarketable," and, "if the purchaser would be exposed to a lawsuit with the least chance of losing it, he ought not to be held to the bargain." Maupin, p. 711.

[13] Appellees alleged, and still urge, that appellants waived their objections to the title, and are estopped by their conduct to insist upon those objections. This contention is based chiefly upon the fact that, during the negotiations looking to the curing of the objection to title, the purchasers assumed dominion and ownership of the property by trying to sell it at a profit, and did not reject the title until and because of the failure to resell at a profit. It is conceded that, on the day the contract of sale was executed, the purchasers consented to list the property, or the contract of purchase, with an agent who represented that he had a purchaser who would pay $100,000 therefor, with the proviso that the agent would have only two days in which to effect the sale, but no longer. Appellees introduced testimony to show that a few days prior to rejecting the title the purchaser listed the property for only two days with this agent, who failed to effectuate a sale. It is conclusively shown, however, that during this period the purchasers were ready, able, and willing to complete the purchase, if their objection to the title was cured, and rejected the title only when the seller admitted he could not meet the objection. This incident was not sufficient to establish waiver or estoppel, and there was no other evidence thereof.

[14] It is also contended by appellees that, as the objection discussed was not made, and does not apply, to one of the two lots to be purchased under the contract, the contract should be enforced as to that tract, even though not enforceable as to the other. We overrule this contention, however. There is nothing in the contract or the conduct of the parties indicating any intention to treat the obligations of the parties as severable with reference to the two tracts. On the contrary, it is apparent that the transaction was not intended to be severable, and, as a practical matter, is not so.

[15-18] The bank was a mere stakeholder, and was justified in holding the stake pending the controversy and litigation between the parties. When sued, it pleaded the facts, and its readiness to pay over the stake to the party adjudged to be entitled thereto. In such case it should not be required to pay interest upon the amount of the stake or any of the costs, and we conclude the court erred in rendering judgment against the bank for such interest. So also was it entitled in the abstract to recover attorney's fees, which were denied it below. These matters are raised in assignments of error presented by the bank, but, as no evidence is pointed out in the briefs upon which a judgment could be rendered for attorney's fees, no error is shown in the judgment denying recovery therefor.

The judgment will be reformed so as to exclude interest upon the amount recovered from the bank, and to tax the costs incurred by the bank against appellant, the Texas Auto Company. In all other respects the judgment will be affirmed.