SPENCER et ux. v. MAVERICK.

No, 10674.

Court of Civil Appeals of Texas. San Antonio.

Jan. 8, 1941.

Moursund, Ball, Moursund & Bergstrom, of San Antonio, for appellants.

Dodson, Ezell & Duke and J. D. Dodson, all of San Antonio, for appellee.

SMITH, Chief Justice.

Laura Wise Maverick sued A. B. Spencer, Jr. (and wife), to recover $2,000 earnest money paid under a contract to purchase Lots 6 and 7, Block 121, in the City of Alamo Heights, in Bexar County.

The cause was tried to the court upon a stipulation of the evidence and judgment was rendered in favor of Mrs. Maverick as prayed for. The Spencers have appealed. The trial judge filed no findings of fact or conclusions of law, as none were requested.

In the contract of sale appellant was obligated to furnish "a complete abstract * * * Title to be good and marketable or to be made so within a reasonable time, at the expense of the seller"; purchaser was given a stipulated time to investigate title after receipt of abstract, and if defects or objections were found to set forth

the same in a written opinion; deal to be closed when such defects and objections were removed; if seller failed to remove defects, or "if title be found objectionable and cannot be cleared within reasonable time," purchaser was given option to require specific performance or return of earnest money.

It appears to be conceded that under the contract of sale appellants were obligated to furnish a complete abstract, showing, by its own contents, a good and merchantable title in appellants to the property to be conveyed. Appellants furnished a purportedly complete abstract, which they did not thereafter supplement or offer to supplement, thereby assuming the position that the abstract furnished showed, by its own contents, the character of title contracted for.

In due course, and after some correspondence, appellee declined to proceed with the purchase and demanded the return of the earnest money advanced by her, which was refused by appellant. This suit followed, with the result stated.

In their brief appellants select the following definition of "marketable title": "The term 'marketable title,' when applied to real property, means one reasonably free from such doubt as would affect the market value of the estate; one which a prudent man with knowledge of all the facts and their legal bearing would be willing to accept (5 Words and Phrases, First Series, page 4388 et seq.); not doubts based on captious, frivolous, or astute niceties, made up for the occasion, but grave and reasonable doubts, such as would induce a prudent man to hesitate in accepting a title affected by them, and such as would make it possible or reasonably probable that the purchaser's right may become a matter of investigation, and thus affect its value. A marketable title is one that will bring as high a price in the market with the purchaser's objection to its sufficiency as without [citing authorities]." Texas Auto Co. v. Arbetter, Tex.Civ.App., 1 S.W.2d 334, 336.

Appellee presents this definition of the term: "A good and merchantable title is said, in 5 Thompson on Real Property, § 4296, to be: 'A title that is fairly deducible of record and not depending on matters resting in parol. The term "marketable title" when applied to real estate, means a title free from reasonable doubt. An equitable title is not a marketable title.

A title open to reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending upon a disputed question of fact or a doubtful question of law in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding. * * * It would especially be unjust to compel a purchaser to take a title the validity of which depends upon a question of fact where the facts presented upon the application might be changed on a new inquiry or are open to opposing influences. A reasonable doubt concerning the title exists when there is uncertainty as to some fact appearing in the course of its deduction, and the doubt makes it such as affects the value of the property or will interfere with its sale. It is one in which the possession can be acquired and retained without litigation or judicial decision. It means a title that is reasonably free from such doubts as will affect the market value of the estate; one which a reasonably prudent person with knowledge of all the facts and their legal bearing, would be willing to accept. The title should not only be good, but indubitable. * * * A title may be perfect and yet not marketable. * * * A title may be good in fact but to be marketable it must [be] of good record.' * * * 'Where the contract stipulates the character of title to be conveyed, effect will be given to such stipulation.' We think the Texas cases are in line with the rules announced in the text just quoted. * * * 'Inasmuch as the law implies a contract that the purchaser shall receive a good title to the land, free from all defects, charges and incumbrances, it would seem unnecessary that the purchaser should insert in the contract any provision assuring him such title.'" Shamrock Oil & Gas Co. v. Williams, Tex.Civ.App., 63 S.W.2d 570, 574.

■ At the outset we must determine the question of whether the burden rested upon appellee to show, or upon appellant to negative, that the defects of title appellee pointed out were such as were reasonably calculated to render the title unmerchantable within the purview of the contract. Upon that question we hold, generally, that where, as in this case, the seller is required to furnish abstract showing merchantable title, and purchaser is required within a stipulated time to point out the defects of

title shown in the abstract so furnished, and does so, the burden rests upon the seller to cure the claimed defects or else show they are not such as would impair the merchantability of the title (Lieber v. Nicholson, Tex.Com.App., 206 S.W. 512; Davenport v. Sparkman, Tex.Com.App., 208 S.W. 658); whereas, on the other hand, if the purchaser raises objections upon defects not disclosed in the abstract, the burden rests upon him to show that those defects are such as impair the merchantability of the title. Hollifield v. Landrum, 31 Tex.Civ.App. 187, 71 S.W. 979. We come, then, to the specific objections to title pointed out by appellee through the opinion of her attorneys.

And, first, we consider the fifth objection, as follows: "5. Paving improvements have been made around the property, to secure the payment for which the law gave a lien. The abstract does not show whether or not such a lien exists, and satisfactory proof should be furnished that no paving lien exists against the property."

The existence of the improvements mentioned in the objection was not disclosed in the abstract of title furnished appellee by appellant, and under the rule stated the burden rested upon appellee to show that the defect was such as to impair the merchantability of appellants' title. For, while it is true a prospective purchaser would be required to take notice of the existence of those improvements and of the proceedings of the municipality with respect thereto (Heisig v. Vaughn, Tex.Civ.App., 15 S.W.2d 113; Uvalde Co. v. Tribble, Tex.Civ.App., 292 S.W. 932), the extraneous fact of the existence of those improvements cannot be said to have been disclosed by the abstract, and the burden of going forward with proof of injury was cast upon appellee. Hollifield v. Landrum, 31 Tex.Civ.App. 187, 71 S.W. 979. That burden was not discharged by appellee. While the stipulation of the evidence shows the existence of said improvements at the time the contract involved was made, there is nothing therein, save the statements contained in the reply letter of appellants' attorneys to said objection 5, tending to show whether any lien was or was not created by reason of said improvements. And, if those statements could be looked to, they show that no lien was ever created.

Appellee's objection 6 to the title tendered by appellants relates to restrictions against the business use of the property involved.

One of appellants' contentions under that objection is that the undisputed evidence shows that the abstract does not disclose a "general scheme" of selling and conveying lots out of the Alamo Heights subdivision against business use, and that, therefore, the burden to prove this objection impaired the market value of Lots 6 and 7, or interfered with their saleability, rested upon appellee, and that burden was not met.

The abstract showed: (a) deed in 1910 from Alamo Heights Company to V. A. Scovill to Lot 6, wherein it was provided that title should pass, and the deed was made, upon certain conditions, among others, that vendee, his heirs or assigns, would not use the same or permit use thereof "for business pursuits, other than hotels, boarding or lodging houses," nor for the treatment of contagious or infectious diseases for profit, nor for the sale, etc., of malt or other intoxicating liquors; (b) successive deeds to Lot 6 bearing the same restrictions; (c) deed from Alamo Heights Company to Clifton George Company in 1914, and correction deed in 1915, to approximately 700 lots in Alamo Heights subdivision, including said Lot 7, but not said Lot 6, and in which all restrictions contained in deeds to Lot 6 were retained except only the restriction against hotels, etc.; (d) deed from Clifton George Company in 1922 to P. M. Gordon, containing the same restrictions as in deed to the approximately 700 lots above mentioned, and adding a restriction that the cost of any building "to be used as a dwelling or for mercantile purposes," should not be less than $4,500; (e) deed to appellants to both Lots 6 and 7 in which no restrictions whatever were mentioned; (f) instrument in writing in 1926, executed by Clifton George Company, which recited the conveyance, above mentioned, of the 700 lots with restrictions, followed by language expressly "releasing in favor of any bona fide mortgagee or lienholder, both now and hereafter, all of the above-mentioned restrictions, conditions and limitations, in so far as same may affect the rights of such mortgagee or lienholder," because such restrictions "made it difficult for owners of property so restricted to obtain loans thereon."

■ Although no specific reference in deeds to Lot 6 was made to any "general scheme" of restrictions, yet we hold that the contents of the abstract in this case clearly imported such a general scheme, for, it has been held that where, as in this case, the evidence shows all conveyances of lots in a subdivision, including that to be conveyed, contain a restriction against erection of houses for a contract price less than a stated sum, this was sufficient to charge a prospective purchaser with notice of the restriction as a general scheme. Dellaughter v. Hargrove, Tex.Civ.App., 40 S.W.2d 253.

■ Moreover, the rule is that a purchaser is not only charged with notice of the contents of deeds in his chain of title but, if the same contain anything that would put a prudent man upon inquiry, he is chargeable with notice of whatever an inquiry would reveal. Wilkerson v. Ward, Tex.Civ.App., 137 S.W. 158, writ refused.

■ And, "a purchaser of land is chargeable with notice of all conditions, restrictions, exceptions, or reservations appearing in his chain of title, or concerning which he is put on inquiry * * *. Where a purchaser has notice of the existence of restrictions because they appear in the direct chain of title, he is chargeable with knowledge of the purpose for which the restrictions were made." 66 C.J. p. 1128, § 962.

That a "general scheme" against general business use existed in Alamo Heights subdivision, was established in Clifton George Company v. Great Southern Life Insurance Company, Tex.Civ.App., 234 S.W. 705. The pertinent proceedings in that case appear in the stipulation of the evidence here.

■ We cannot agree with appellants that the undisputed evidence showed the abstract did not disclose a "general scheme," since there appeared in the abstract sufficient in our opinion to put a purchaser, and therefore a prospective purchaser, upon notice of the probable existence of such general scheme, at least as to Lot 6.

Appellants stress their construction of objection 6. They analyze the objection and point to quoted parts thereof as showing that in the opinion of appellee's attorney there is no reasonable doubt that the restrictions upon business use would not subject a purchaser to claims or litigation. They further contend that certain language in objection 6 does not point out, as objected to, the restrictions against specific business uses. But, construing all the language of objection 6 together in the light of the stipulated fact that the contract "was entered into with the understanding that said property was business property and was to be used as business property," and because the contract required objections to be stated, we think a reasonable construction of objection 6 is that it advanced objections to the title because of both said general and specific business restrictions, and appellants' contentions are therefore overruled.

Appellants further contend under objection 6 that the undisputed evidence shows prior grantors and all lot owners in Alamo Heights subdivision have, by estoppel and laches, lost their rights, if any, to enforce or to complain of the violation of the general restriction against business use contained in the deeds to Lot 6; that such rights have so been lost as to any business use to which said lot or both lots may hereafter be put. Appellants rest such contention upon these facts: that appellants and appellee know of no complaint whatever having been made of violation of said restriction; that there are no suits pending making such complaint; that appellants have, since their purchase, made particular business uses of said lots without complaint; that the abstract does not disclose any such complaint; that Lot 7 has been used for a drug store business since 1922, the gasoline filling station on Lot 6 since 1932, the lumber yard on Lot 6 since 1934, and the grocery on both lots since 1929, without complaint; that the plat of Alamo Heights subdivision shows various parts of said subdivision are devoted to business uses, and that the $50,000 contracted consideration for Lots 6 and 7 indicates changed conditions.

The stipulation of the evidence shows that the original proprietor of Alamo Heights subdivision conveyed to Clifton George Company 700 lots. The plat in evidence shows that Alamo Heights subdivision is an extremely large subdivision, comprising approximately 140 blocks. The plat shows only eleven fairly scattered locations out of the entire subdivision purporting to be used for business purposes, and out of these eleven locations, two are shown as devoted to school purposes. The area of even one of the schools is very greatly in excess of the combined area

of the other business locations. There is nothing in the stipulation of the evidence to show that any of the lots have been devoted to business uses other than for schools, grocery, butcher, cake shop, drugs, gasoline filling station and lumber yard.

■■ The rule is well stated in Ward v. Prospect Manor Corp., 188 Wis. 534, 206 N.W. 856, loc. cit. 859, 46 A.L.R. 364, loc. cit. 368, 369:

"Modern authority has made a distinction between the rights of a proprietor in such respect and the rights of an individual lot owner, such distinction arising from the fact that the proprietor is or may be directly interested in violations of such covenants upon any part of the entire tract, and acquiescence on his part may appropriately deny to him the equitable right to enforce the covenants, but a violation of a restrictive covenant at a point on a tract distant from the lot of an individual lot owner may be of no interest whatever to such an owner, and cannot appropriately call for affirmative action on his part. Bowen v. Smith, 76 N.J.Eq. 456, 74 A. 675; Brigham v. H. G. Mulock Co., 74 N.J.Eq. 287, 70 A. 185.

"It is now generally recognized by the overwhelming weight of authority in this country that an individual lot owner is not under penalty of waiving his right to the enforcement of a restrictive covenant by his failure to take notice of such violations as do not affect him. Thus in Brigham v. H. G. Mulock Co., 74 N.J.Eq. 287, 289, 70 A. 185, 186, it is said: 'That any claim of bar asserted against the rights of an owner of a single lot by reason of acquiescence in the violation of restrictive covenants of this nature must be measured by the relation of the asserted violation to the individual lot.'

"In De Lima v. Mitchell, 49 Misc. 171, 175, 98 N.Y.S. 811, 813, the court says: 'In order to have the benefit of restrictive covenants, it is not necessary that the plaintiff should take notice of every violation thereof. He may take no notice of violations not especially offensive to him without losing his right to enforce the restrictions in the case of especially offensive violations.'

"In Schadt v. Brill, 173 Mich. 647, 139 N.W. 878, 45 L.R.A.(N.S.) 726, the court, after a very complete review of the authorities, said: 'We find the law well settled to the effect that a person owning property in restricted territory does not waive or lose his right to enforce the restrictions where their violation becomes especially and personally offensive and injurious to him and his property by reason of his previous omission to take notice of violations, and insist on observance of the covenants, in cases not affecting him or his interests, or the locality in which his property is situated.'

"The following are a few of the numerous authorities supporting this doctrine: Morrow v. Hasselman, 69 N.J.Eq. 612, 61 A. 369; Payson v. Burnham, 141 Mass. 547, 6 N.E. 708; Bacon v. Sandberg, 179 Mass. 396, 60 N.E. 936; Meaney v. Stork, 80 N.J.Eq. 60, 83 A. 492; Yeomans v. Herrick, 178 Mo.App. 274, 165 S.W. 1112; Seawright v. Blount, 139 Ga. 323, 77 S.E. 152; Brown v. Huber, 80 Ohio St. 183, 88 N.E. 322, 28 L.R.A.(N.S.) 705."

■ In Dethloff v. Voit, 172 App.Div. 201, 158 N.Y.S. 522, 523, the Supreme Court (Appellate Division) of New York had before it facts which were quite strong to support "changed conditions." In that case the restrictive covenants were contained in a deed executed and recorded in the year 1846. The suit was by buyer to recover $750 because of the unmarketability of the title to land which defendant contracted to convey plaintiff. Defendant, in an attempted performance of that contract, had tendered to plaintiff a full-covenant warranty deed to the land. Plaintiff rejected the deed. The title was held to be unmarketable. It was said by the court in that case: "It is highly probable that the restrictive covenants are no longer enforceable, and that there is but little danger of liability for damages for a violation thereof in the use of the premises in question; but those questions cannot be decided on this submission, for the parties who may attempt to enforce the restrictive covenants or to recover damages for their violation are not before the court and would not be bound by the decision."

See also 66 Corpus Juris, pp. 869, 878, 879, §§ 537, 546. Appellants' contention that all lot owners in the subdivision are, by estoppel and laches, now barred of any right to enforce or to complain of the violation of the general restriction against business use to which said Lot 6 might in the future be put, is, to say the least, of doubtful merit, and in any event the security of appellants' title rests in the unadjudicated right to plead and enforce waiver and estoppel against others, not parties to

this suit, who have had in the past, if not now, a cause of action against the owners of these properties for violation of the restrictive covenants mentioned. These rights are subject to possible if not probable litigation in the future, the threat of which hangs over the owners and their assigns. Appellee was not bound under her contract to accept a title burdened with the doubts growing out of those restrictions. It is not sufficient to say that under all the facts and circumstances appellants would be bound to win a suit brought against them to enforce those restrictions or for damages for their breach, for "'a title dependent upon the question whether certain acts, conduct or admissions amount to an estoppel in pais is unmarketable,' and, 'if the purchaser would be exposed to a lawsuit with the least chance of losing it, he ought not to be held to the bargain.' Maupin p. 711." Texas Auto Co. v. Arbetter, Tex.Civ.App., 1 S.W.2d 334, 339. Accordingly, appellants' contention is overruled.

Appellants further contend under objection 6 that the principle of law, as stare decisis, laid down in Clifton George Co. v. Ins. Co., Tex.Civ.App., 234 S.W. 705, is applicable to this case and has the effect of abrogating all business restrictions in Alamo Heights subdivision. There were two trials and appeals of that case. The first appeal (234 S.W. 705) was from an order, in effect, temporarily restraining Clifton George Company from enforcing the same general restriction as that involved here, in respect to lots used for the conduct of a private school for profit. The second appeal was from the judgment perpetuating said injunction, and the opinion is reported in, Tex.Civ.App., 247 S.W. 912. We do not find it necessary to decide whether the principle of law announced and applied on the first appeal had the effect claimed for it by appellants, because, under substantially identical facts on the second appeal, an entirely different principle of law was announced and applied by this Court. The essence of the principle of law applied on the second appeal (247 S.W. 912) was this: that a restriction against business use, if property be used for the conduct of a school, is a restriction violative of public policy and therefore void and unenforceable.

The trial court in this case had the discretion, not shown here to have been abused, to regard the principle of law declared on the second appeal in that case as the applicable principle of law, and, since such principle did not strike down the general restriction further than as applied to school use, that this case was not ruled by stare decisis. We adopt that conclusion and overrule appellants' contention.

It is the further contention of appellants under objection 6, that, since the stipulation of the evidence shows the City of Alamo Heights in 1928 formally adopted a zoning ordinance, and that an ordinance of said city expressly designates Lots 6 and 7 as business property and expressly authorizes their use as business property, and further shows all of the business buildings erected on said lots, except the drug store, have been erected since the zoning ordinance went into effect, and that building permits had been obtained for the construction of the same in accordance with the terms and provisions of said ordinance, —all lot owners in the subdivision are bound so that no reasonable expectation of ever being required to litigate the question of business use exists. We overrule this contention. Assuming that all the facts stated are shown in the stipulation of the evidence, it does not follow that the zoning ordinance and the other ordinance mentioned would have the effect of abrogating pre-existing contractual restrictions against business uses. The general restriction against business use in the deeds to Lot 6 and the two specific restrictions against business use in deeds to Lots 6 and 7, before mentioned, antedate the said ordinances, and we hold, upon authority, that the power of the city to zone cannot override restrictive covenants in existence at the time the zoning ordinance is passed. It is well said in Burgess v. Magarian, 214 Iowa 694, 243 N.W. 356, page 358, as follows:

"Zoning ordinances, while of ancient origin, have only become matters of utility in this country in the later years, and, while the Legislatures of some forty-three states have conferred upon municipalities the power to pass zoning ordinances, the decisions of the various courts are not very numerous on the question, but the cases we have been able to find all point in one direction, and that is, where private restrictive covenants have been placed upon lots or land by agreement of parties, they are controlling, and city zoning ordinances cannot override or destroy such private restrictive covenants.

"In Metzenbaum on the Law of Zoning, p. 282, it is said:

"'* * * For example—if restrictions have been written into deeds, forbidding the use of the property for stores or commercial purposes, and if a zoning ordinance provides that the same property may be used for store or commercial purposes, then the deed or private restrictions continue to control and are not displaced by the less restrictive provision of the zoning ordinance.'

"This is the rule laid down in Crawford v. Senosky, 128 Or. 229, 274 P. 306; Kroner v. City of Portland, 116 Or. 141, 240 P. 536. See, also, City of Atlantic City v. Atlantic City Steel Pier Co., 62 N.J.Eq. 139, 49 A. 822; Ludgate v. Somerville, 121 Or. 643, 256 P. 1043, 54 A.L.R. 837; Kramer v. Nelson, 189 Wis. 560, 208 N.W. 252; Dolan v. Brown, 338 Ill. 412, 170 N.E. 425. These decisions all support the conclusion that the power of the city to zone cannot override private contracts between parties where the restrictive covenants are in existence at the time the zoning is done."

■ We come now to objection 8, which relates to the failure of the record, as disclosed in the abstract, to show documentary stamps on certain deeds appearing in the abstract. It was contended that this omission impaired the marketability of the title. On the authority of Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567, we hold the objection is without merit.

The ninth and last objection relates to the easement executed by appellants to the San Antonio Public Service Company in 1932, wherein they did "grant and convey" to said company, its successors and assigns, the right to connect with the "gas supply pipes" located on Lot 6 and to set gas meters thereon and to maintain the same for the "purpose of supplying gas to the premises," and the further right "to at all times" enter upon the lot for the purpose of "reading said meters and repairing the same and such gas supply pipes." It was expressly stipulated in the conveyance that the rights conveyed were binding upon grantors' heirs, executors and assigns, and intended as a "covenant running with and a charge upon" said Lot 6. Although no facts or circumstances surrounding the execution of said easement are shown by the stipulation of the evidence, appellants nevertheless contend that said easement "could only enhance the marketability of the title."

We cannot hold as a matter of law that that easement constituted a benefit to Lot 6. Appellants contend the burden of that easement is "so slight as not to interfere with the use of the property." No evidence is adduced, no case is cited to support that assumption. Appellants further contend that "necessarily the utility company must have such right (i. e., to enter the property, read meters and repair gas supply pipes) even if no written permission had been given." No case in support is cited, whereas, the very contention raises the question: Why, then, was the easement taken?

■ The trial court, having only the easement instrument itself before it, might reasonably have concluded that the covenant running with the land granting the right to "at all times" enter upon Lot 6 to repair said "gas supply pipes" for the purpose of supplying gas to Lot 6, might be construed by grantee, its successors and assigns, to give the exclusive right to perpetually furnish gas to said lot, and that it was a construction they might be willing to maintain by litigation. It is not necessary for this Court, nor was it necessary for the trial court, to determine whether such construction be reasonable or unreasonable, since only the easement instrument itself was in evidence, and the burden to prove said easement was a benefit, or to prove said easement did not impair the market value of Lot 6, rested upon appellants, and that burden was not met. The following cases deal with easements regarded as encumbrances justifying rejection of tendered titles: Krotzer v. Clark, 178 Cal. 736, 174 P. 657; Broadway-Long Beach Realty Corporation v. Feiber, 141 Misc. 764, 252 N.Y.S. 612; Sorosis Bldg. Corporation v. Prolay Realty Corporation, 230 App.Div. 683, 245 N.Y.S. 507.

Appellants' contentions under objection 9 are accordingly overruled and no reversible error being presented the judgment is affirmed.