## HEISIG v. VAUGHAN & GARDNER.*
### (No. 3644.)

Court of Civil Appeals of Texas. Texarkana. Feb. 27, 1929.

Rehearing Denied March 7, 1929.

*Writ of error refused.

Young & Stinchcomb, of Longview, for plaintiff in error.

E. M. Bramlette, of Longview, for defendant in error.

HODGES, J. This is an action by the defendant in error to recover the sum of $241.-23, with interest and attorney's fees, due upon a paving certificate issued by the city of Longview, and to foreclose a special tax lien on a lot situated on Methvin street of that city. The facts found and filed by the judge before whom the case was tried are, in substance, as follows:

In August, 1919, the city of Longview determined to pave Methvin street, and thereafter adopted the necessary resolutions, ordinance, and other proceedings required by its charter and the law of the state to authorize the assessment of a part of the cost of the paving against the abutting property owners. At the time the assessments were made, the paving completed, and the certificates issued, the lot involved in this suit was owned by T. C. Morgan. The special tax assessed against Morgan amounted to $241.-23. Both the assessing ordinance previously adopted and the certificate recited that a lien for the amount of the tax was fixed against the lot. A short time thereafter the lot was sold under an execution issued against Morgan, and was purchased by the plaintiff in error for the sum of $700.

It appears from the record that the plaintiff in error was at the time a nonresident of the city of Longview, and had no actual notice of the existence of the tax lien against the property or of the municipal proceedings by virtue of which the paving was done. In this appeal the regularity of proceedings and the validity of the tax and lien as it originally existed are conceded. The only defense is that the plaintiff in error, at the time of his purchase, had neither actual nor constructive notice of the existence of the lien. The court found that he did not have actual notice, and that neither the assessing ordinance, nor the contract under which the paving was done, nor the certificate sued on, was recorded in the office of the county clerk of that county prior to the sale of the lot. The judgment foreclosing the tax lien was based upon the conclusion of the trial court that the plaintiff in error was charged with notice of the municipal proceedings authorizing the paving as they appeared in the municipal records. The sole question presented in this appeal is: Was that holding correct?

Counsel for plaintiff in error contend that liens of this character come within the provisions of our registration laws and must be recorded in the office of the county clerk in order to furnish constructive notice of their existence to subsequent purchasers. Article 6626 of the present revision, upon which they rely, is as follows: "The following instruments of writing, which shall have been ac-

knowledged or proved according to law are authorized to be recorded, viz., all deeds, mortgages, conveyances, deeds of trust, bonds for title, covenants, defeasances or other instruments of writing concerning any lands or tenements, or goods and chattels, or movable property of any description."

We are of the opinion that the above provisions refer to written conveyances, contracts, and liens which owe their existence to agreements between the parties, and not to those created by law. Uvalde Co. v. Tribble (Tex. Civ. App.) 292 S. W. 932. If the lien which the defendant in error seeks to foreclose owes its existence solely to the contract under which the paving was completed, or to the terms of the certificate issued to the contractors who did the work, then there may be some reason why one or the other of those instruments should be recorded in the office of the county clerk, in order to furnish constructive notice to subsequent purchasers. But, if the lien is the creature of the law, or results as an incident which the law attaches to the paving transaction and the conditions under which the paving was done, there does not appear any legal reason why the evidence of the lien should be recorded elsewhere than the place where the official record of the municipal proceedings were kept.

The proof shows that the city of Longview was incorporated under the provisions of a special charter granted by the Legislature in 1911. See Special Laws of the 32d Legislature, p. 1. By its terms the act required the courts to take judicial notice of the charter and its provisions. The act also recites that the city of Longview had previously adopted the terms and benefits of chapter 14 of the Acts of the 2d Called Session of the 31st Legislature, which appears as chapter 11 of title 22 of the Revision of 1911. The provisions thus adopted authorized cities and towns to improve their streets and to assess one-third of the cost of such improvements against the abutting property owners. It further provides:

"And such governing body shall have power to cause to be issued in the name of the city assignable certificates, declaring the liability of such owners and their property for the payment of such assessments, and to fix the terms and conditions of such certificate. * * * The ordinance making such assessments shall provide for the collection thereof, with costs and reasonable attorneys' fees, if incurred. Such assessments shall be secured by, and constitute a lien, on said property, *which shall be the first enforceable claim against the property against which it is assessed, superior to all other liens and claims, except state, county and municipal taxes.*" (Italics ours.)

See article 1011, Revised Civil Statutes of 1911.

This statute should not be construed as merely delegating to the governing body of the city the power to fix a lien against abutting property for a portion of the cost of making street improvements, but as directly imposing the lien when the proceedings permitted have occurred. The city is given the right to determine whether or not the improvements shall be made, how they shall be made, and the right to assess the tax against the abutting property owners for one-third of the cost. When that is done the lien securing the assessments arises by implication of law. While the assessing ordinance, the paving contract, and the certificate may each recite the lien, yet none of these creates the lien. This statute is in some respects similar to the law which creates the landlord's lien. Under the provisions of that law a landlord and tenant need not contract for the lien; that arises by operation of law, from the nature of the transaction. It is well settled that, unless the statute requires it, liens created by law need not be recorded in the office of the county clerk, in order to preserve their priority over subsequent purchases without actual notice. Caswell v. Lensing & Bennett (Tex. Civ. App.) 183 S. W. 75; Frith v. Wright (Tex. Civ. App.) 173 S. W. 453, and cases referred to.

The statute creating this special tax lien for the cost of making street improvements provides that they shall be superior to all other "liens and claims except state, county and municipal taxes." That language means something more than mere priority over subsequent liens and conveyances, taken with actual, or constructive, notice of the tax lien. Evidently it was the purpose of the Legislature to make such liens superior to all existing liens and claims of every character except state, county, and general municipal taxes. That purpose would be defeated if subsequent purchasers could invoke the registration laws for their protection, since there is no authority for recording liens of this character.

If this tax lien may, without the consent of the holder, displace a valid contract lien existing at the time the tax lien arises, there is little reason for saying it is not superior to a lien or claim of title arising after the tax lien had taken effect. Certainly a subsequent lienholder, or claimant, is entitled to no more protection against the tax lien than that which belongs to prior lienholders and owners.

An incorporated city is, in some respects, a subdivision of the government, and is vested with certain governmental functions. It is a part of its duty, under our laws, to provide for improving its streets and highways. In performing that duty in the manner authorized by its charter, the city is exercising its governmental functions. Its ordinances adopted for the purpose of discharging those governmental duties are local laws of which the inhabitants of the city and all others dealing with property over which the city may assert jurisdiction must take notice. Abbott on Municipal Corporations, (1st Ed.) § 561. The ordinance of the city of Longview, adopted for the purpose of assessing against the abutting property owners a part of the cost of improving Methvin street, was a public ordinance which had been made final in the manner required by the city charter and the relevant statutory regulations. The inhabitants of the city were charged with notice of the adoption of that ordinance and of its provisions, whether they had actual notice or not.

To require more would impair the effects of local legislation and seriously handicap the municipality in the exercise of its governmental functions. If the plaintiff in error had been an inhabitant of the city of Longview, clearly he would have been charged with notice of the authorized municipal proceeding under which the paving was contracted for and completed. He would not be permitted to say that he was ignorant of the local laws of the government under which he was living—laws adopted, presumably, for his benefit. Public policy requires that non-residents of a city be charged with the same notice of municipal regulations which the law imputes to the residents, when such non-residents elect to deal with property over which the city has rightfully exercised its governmental authority. If a nonresident purchases city property, he takes it subject to the tax lien with which the property is incumbered and subject to the authority of the city to impose future incumbrances for governmental purposes.

Every one, whether a resident or a nonresident, is charged with notice of the nature and extent of the powers conferred by law, or by their charters, upon incorporated cities and towns. In this instance the proof showed that Methvin street had recently been paved. That fact must have been obvious to any one who chose to make even a casual inspection of the property abutting on that street. That situation was sufficient to put a prospective purchaser on inquiry as to how that paving had been done, and whether or not the city had exercised its power to contract for the improvement in the manner authorized by the statute and its charter. The proper course to pursue for the purpose of ascertaining that fact was to examine the records of the city, where its official proceedings were kept. These were equally as accessible as were the county records, and a far more appropriate place for making the inquiry.

We concur in the conclusion reached by the trial court, and the judgment will be affirmed.