**JOHNSON et al. v. CITY OF DALLAS.**

No. 11559.

Court of Civil Appeals of Texas. Dallas.

Dec. 15, 1934.

Rehearing Denied Jan. 19, 1935.

Leo R. Tresp, Geo. T. Burgess, and Thos. G. Murnane, all of Dallas, for plaintiffs in error.

266

Hugh S. Grady, W. Hughes Knight, A. J. Thuss, and H. P. Kucera, all of Dallas, for defendant in error.

BOND, Justice.

The city of Dallas instituted this suit against Emily L. Johnson and H. J. Johnson to recover upon a special assessment levied against them and their property in a proceeding had with reference to the opening and widening of Orange street and Cedar Springs avenue from the west line of McKinney avenue to the southeast line of Cedar Springs avenue and Cedar Springs avenue between the northeast line of Cottonwood street and the southwest line of Maple avenue. During the pendency of the suit, M. B. Johnson purchased the property involved and was permitted to intervene and be made party defendant.

For cause of action, the city of Dallas alleged that on December 8, 1926, in accordance with the provisions of the law (articles 1201 to 1220, R. S. 1925), the governing body of the city passed a resolution ordering and determining the proceedings to open, widen, and straighten the street and avenue, and providing that the payment for all property to be taken and appropriation for such purpose shall be paid by the owners of property, benefited by the improvement. The resolution further providing that the governing body deems it necessary to make the improvement and directs the city engineers to prepare the necessary plan and specifications, amount of the property to be taken, together with an estimate of cost thereof, and make report as to whether or not the property owners and the city could agree as to the compensation to be paid for the land to be taken.

On December 13, 1926, the governing body received the engineer's report, as directed, and, in accordance with the city charter, adopted a further resolution, ordering the filing of condemnation proceedings against the various property owners whose property was sought to be taken, and, among other things, declaring that, in the hearing before the commissioners of condemnation to be appointed, the commission shall include, not only a hearing and determination of the amount which should be awarded to the owners of property which shall be taken, but the amount to be paid by the owners of property abutting on the improvement and in the vicinity thereof and specially benefited thereby.

On December 23, 1926, the judge of the county court of Dallas county at law No. 2 appointed special commissioners of condemnation and to assess benefits. The commissioners, after duly notifying all property owners involved in the improvement district, and affording them a hearing, assessed the total amount of damages to be paid to the property owners whose land was to be taken, determined the amount of cost to be assessed against the owners and their property specially benefited by the improvement, and, on September 19, 1927, filed with the governing body of the city its report, in writing, showing the amount which should be assessed against each person and his property specially benefited by the improvement.

On October 26, 1927, the governing body of the city duly approved and adopted the amount of the assessments recommended by the commissioners, and on November 9, 1927, enacted the final ordinance levying the assessment against the owners of property specially benefited by the improvement, and authorizing the issuance of assignable certificates payable in accordance with the provisions of the city ordinances; the amount against Emily L. Johnson and H. J. Johnson and their property being the sum of $1,543.70.

The plaintiffs in error, as defendants in the court below, presented their general and special demurrers to the plaintiff's petition, challenging the action of the special commissioners of condemnation and to assess benefits, basing their contention on the ground that the commissioners appointed by the county court of Dallas county at law No. 2, or by the Honorable John A. Rawlins, judge of said court, were not appointed by the county court of Dallas county, Tex., or the judge thereof, as required by statute. And, answering to the merits, the defendants alleged that they appeared before the special commissioners of condemnation and to assess benefits, produced evidence, and proved that the property in question would not in any wise be benefited by the proposed improvement, and, after the hearing, the commissioners assured them that the property would not be benefited by the improvement, and that no assessment would be made without a further special notice and hearing. Thus, relying upon the representations of the commissioners, the defendants alleged that they were led to believe and did believe no assessment would be made against them and their property, and that the commissioners' action in assessing the benefits without

further notice and hearing constitutes legal fraud, justifying a cancellation of the special assessment.

The case was submitted to the court without the intervention of a jury, resulting in the overruling of defendants' demurrers, sustaining plaintiff's exception to defendants' defense, and, on plaintiff's evidence and agreed statement of facts, rendering judgment in favor of the plaintiff, city of Dallas, for the amount of the assessment and interest, together with foreclosure of the lien, from which action this writ is prosecuted.

Plaintiffs in error concede, as stated in the agreed statement of facts, "that the City of Dallas took all the necessary prerequisites required by law to fix a valid assessment against them and their property; that all the proceedings, including the assignable certificate introduced in evidence, were done under the terms of the statute and ordinances of the City," but assigned that the provisional statutory proceedings do not give rise to a legal assessment for the reason the county court of Dallas county at law No. 2 or the judge thereof had no jurisdiction to appoint the special commissioners of condemnation and to assess benefits; therefore the commissioners' findings could not be made the basis for the proceedings of the governing body of the city in making the assessment against the defendants' property, as the Constitution and laws of the state of Texas vest matters of eminent domain exclusively within the jurisdiction of county courts and the judges thereof, therefore the assessment predicated on the action of the commission appointed by the unauthorized court, or the judge thereof, was void.

This same question was raised in similar proceedings in the case of City of Dallas v. Johnson, 54 S.W.(2d) 1024, 1028, decided by this court, speaking through Chief Justice Jones. It was therein held: "That the county court of Dallas county, the county court of Dallas county at law No. 1, and the county court of Dallas county at law No. 2 have concurrent jurisdiction over all matters that are prescribed by article 1970—3, as the jurisdiction of the county court at law No. 1. This grant of jurisdiction includes the specific matter under review. It is also equally obvious from the statutes creating the two county courts at law for Dallas county and prescribing their jurisdiction that these courts are essentially constitutional county courts with limited jurisdiction. State v. Valentine (Tex. Civ. App.) 198 S. W. 1006."

A review of the statutes and authorities, we think, will demonstrate the correctness of the holding as pronounced in the above-cited case, and settles the question adversely to the contention of the plaintiffs in error.

The general laws of the state of Texas, from a very early date, now article 3264, subd. 1, R. S. 1925, provide that the county court or the judge thereof shall have jurisdiction over all matters of eminent domain.

In 1907 the county court of Dallas county at law was created, and its jurisdiction extended (articles 1786, 1787, Vernon's Sayles' Ann. Civ. St. 1914) to "all matters and causes, civil and criminal, original and appellate, over which, by the general laws of the state, the county court of said county would have jurisdiction. * * * The jurisdiction of the county court of Dallas county, at law, and of the judge thereof, shall extend to all matters of eminent domain, of which jurisdiction has been heretofore vested in the county court, or in the county judge. * * *"

In 1917, the Legislature amended the act of 1907 (article 1787, Vernon's Ann. Civ. St. Supp. 1918 [now Vernon's Ann. Civ. St. art. 1970—3]), changing the jurisdiction of the county court of Dallas county at law to have "Original and concurrent jurisdiction with the County Court of Dallas County in all matters and causes, civil and criminal, original and appellate, over which, by the general laws of the State, county courts have jurisdiction, except as provided in Section 3 (Art. 1788) of this Act; but this provision shall not affect jurisdictions of the commissioners court, or of the county judge of Dallas county as the presiding officer of such commissioners court, as to roads, bridges, and public highways, and matters of eminent domain which are now within the jurisdiction of the commissioners court or the judge thereof," and, by succeeding articles, changed the name of the county court of Dallas county at law to the county court of Dallas county at law No. 1, altering its jurisdiction, and creating the county court of Dallas county at law No. 2 (articles 1798a, 1798b, Vernon's Ann. Civ. St. Supp. 1918 [now Vernon's Ann. Civ. St. arts. 1970—15, 1970—16]), also prescribing its jurisdiction to be concurrent with the jurisdiction of the county court of Dallas county at law No. 1, and providing (article 1798d [now art. 1970—18]) that "Nothing in this Act shall be construed as in anywise altering or changing the present jurisdiction provided by law of the County Court of Dallas County, at Law, nor of the County Court of Dallas County, except

that the jurisdiction of the County Court of Dallas County at Law, is hereby made concurrent with the jurisdiction of the County Court of Dallas County, at Law, No. 2, as relates to the civil and criminal jurisdiction of said County Court of Dallas County at Law, as prescribed by the laws of the State of Texas."

In the revision of the statutes, 1925, the Legislature (Final Title, § 2) provided "that all civil statutes of a general nature, in force when the Revised Statutes take effect, and which are not included herein, or which are not hereby expressly continued in force, are hereby repealed," enacted article 1960, which provides that "Where the jurisdiction of a county court has been taken away, altered or changed by existing laws, the same shall remain as established, until otherwise provided by law. Jurisdiction shall obtain in all matters of eminent domain over which the county courts have jurisdiction by the general laws of this State." By this revision the existing laws, creating the county courts of Dallas county at law No. 1 and No. 2, and their prescribed jurisdiction, remains as established.

Article 5, § 1, of the State Constitution, provides that the Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof and may conform the jurisdiction of the other courts thereto.

Furthermore, article 5, § 22, of the Constitution, provides that "The Legislature shall have power, by local or general law, to increase, diminish or change the civil and criminal jurisdiction of County Courts; and in cases of any such change of jurisdiction, the Legislature shall also conform the jurisdiction of the other courts to such change."

Under these constitutional authorities, there is expressed constitutional authority for the creation of county courts by whatever name they may be called. The Legislature has created by the general law other county courts, designated as the county court of Dallas county at Law Nos. 1 and 2, placing condemnation matters within their jurisdiction concurrent with the jurisdiction of the regular county court, conforming the jurisdiction of the county court to such enactments, and defining generally the province of each of the courts by reference to each of the objects confided to the actions of each and the relation of each to the others.

In the case of State v. Valentine (Tex. Civ. App.) 198 S. W. 1006, 1008 (writ of error refused), the court held: "Section 1, Art. 5,

of our Constitution as amended, authorizes the Legislature to provide courts other than those named in the Constitution, evidently to the end that the judicial power of the state, except as otherwise restricted, might be from time to time adjusted to exigencies that might arise in the course of the state's expanding development. Hence we find that the Legislature has provided for special 'district courts' (see Acts 1913, pp. 53, 83, 439, and 441); criminal district courts (see V. S. Tex. Civ. Stat. arts. 2201c, 2229, 2235a); county courts 'at law,' as for Dallas and Harris counties (V. S. Tex. Civ. Stat. arts. 1786 and 1811); and county courts for 'civil cases,' as for Tarrant and Bexar counties (V. S. Tex. Civ. Stat. arts. 1799 and 1811—6). An examination of these several acts will show that the several courts so provided for are not courts 'other' than those named in the Constitution, in the sense that they are of wholly differing functions, but rather courts of the same kind, but with divided powers. To illustrate: These special district courts and county courts are given jurisdiction over parts of a whole originally committed to courts of the same class by the Constitution. No special district court is given power not originally committed to district courts, and no special county court is given powers other than were committed to county courts. The names and territorial limits given these special courts rather than the qualifying affixes and suffixes indicate the character of the courts. The affix 'criminal' or the suffixes 'at law' or 'for civil cases' have reference to the character of the divided jurisdiction given rather than to the character of the court. As named they are essentially district and county courts within the meaning of the Constitution."

From the recited statutes and authorities, it conclusively appears that the county courts of Dallas county at law Nos. 1 and 2 are essentially constitutional county courts, with limited jurisdiction. It therefore follows that the statutes (articles 1960, 3264 and 3271, R. S. 1925), in committing the jurisdiction over eminent domain matters to county courts under constitutional authority, apply to county courts at law, because as such they are none the less county courts, differing only in name and the extent of their powers from the regular county court.

■ The record discloses that on November 9, 1927, the assessment ordinance was enacted by the governing body of the city of Dallas, and under article 1219, R. S. 1925, the plaintiffs in error had 10 days to contest the

assessment or any feature thereof, and their failure to do so precludes them from raising any issue as to the nonexistence of benefits or the illegality of the proceedings. The agreed statement of facts reveals: "That neither of the defendants filed suit within the 10 days time provided by article 1219 of the Revised 1925 Statutes to contest, or in any-wise question the proceedings in any manner whatsoever."

Under the authorities of this state, we think the statutes under review provide an exclusive remedy of reviewing assessments of the character before us, limiting the time as to when a suit may be brought to determine the illegality of the taxation proceedings and the resulting levy and certificate, or to set aside or correct the same or any part thereof or any proceedings with reference thereto on account of any error or invalidity thereof. Therefore a suit brought thereafter cannot be invoked to grant relief. City of Dallas v. Wright, 120 Tex. 190, 36 S.W.(2d) 973, 77 A. L. R. 709.

Plaintiffs in error contend that, they having alleged the special commission of condemnation and to assess benefits acted fraudulently in leading them to believe that no assessment would be made against them and their property, and further leading them to believe that, if any assessment was contemplated, they would be further notified, the breach of such agreements released them of the obligation and necessity of keeping informed as to the progress of the proceedings before the commissioners and relieved them of the necessity of filing suit within the 10-day statutory period after the assessment was made; that such action on the part of the commission lulled them into a sense and feeling of security, thereby preventing them from informing themselves as to the progress of the cause before the commissioners of condemnation and the governing body of the city; that their property was not specially enhanced in value by reason of the improvement; and that the assessment was fraudulently levied—state a cause of action for which they should have been permitted to sue and have the issue determined by a court or jury.

This contention, in our opinion, is untenable. The commissioners specially appointed to conduct the hearing as to benefits to property within the area of the improvement had no authority in law to make the alleged promise or agreement with the plaintiffs in error. Article 1214, R. S. 1925, provides that the commission appointed to make condemnation and assess benefits shall, after giving notice and hearing to the property owners whose property shall be specially benefited, report, in writing, its findings to the governing body. Then, in turn, it became the duty of the governing body to examine the report, if found correct, approve the same, and, by ordinance, assess against the owners and their property found to be benefited by the improvement the amount properly chargeable against them. Therefore the plaintiffs in error were charged with notice in law of the limitations of the powers of the commissioners, that they were to file their report with the governing body of the city for approval, revision, or rejection. It was the duty of the plaintiffs in error to follow the proceedings, and not allow themselves to be lulled to the sense and feeling of security, because of the alleged promises which the commissioners were clearly unauthorized to make. The governing body of the city, acting within the sphere of its jurisdiction, enacted the assessment ordinance, made the levy, and issued the certificate; thus the plaintiffs in error had notice in law of the proceedings and the contents of the ordinance.

In the case of Heisig v. Vaughan & Gardner (Tex. Civ. App.) 15 S.W.(2d) 113, 115, in dealing with the question of notice to a property owner or resident of a city with reference to paving certificates, the court used this language: "An incorporated city is, in some respects, a subdivision of the government, and is vested with certain governmental functions. It is a part of its duty, under our laws, to provide for improving its streets and highways. In performing that duty in the manner authorized by its charter, the city is exercising its governmental functions. Its ordinances adopted for the purpose of discharging those governmental duties are local laws of which the inhabitants of the city and all others dealing with property over which the city may assert jurisdiction must take notice. Abbott on Municipal Corporations (1st Ed.) § 561. The ordinance of the city of Longview, adopted for the purpose of assessing against the abutting property owners a part of the cost of improving Methvin street, was a public ordinance which had been made final in the manner required by the city charter and the relevant statutory regulations. The inhabitants of the city were charged with notice of the adoption of that ordinance and of its provisions, whether they had actual notice or not."

Furthermore, the record discloses that the city of Dallas enacted the ordinance making

the assessment on November 9, 1927, this suit was filed on December 31, 1929, and citation served on plaintiffs in error on January 8, 1930. The plaintiffs in error made no answer to the suit, so the city of Dallas on December 13, 1931, took a default judgment. On April 26, 1932, the default judgment was set aside, and, for the first time, plaintiffs in error filed answer questioning the legality of the assessment proceeding and the claim of fraud perpetrated upon them by the commissioners.

The ordinance of November 9, 1927, was the last statutory regulation leading to the making of the improvement, the assessment, and levy, and, when that was done, the law imposed notice on the plaintiffs in error, and, under article 1219, R. S. 1925, 10 days was accorded plaintiffs in error to bring an action for redress in the courts of this state. Clearly, to permit the plaintiffs in error to sit by idly from November 9, 1927, the date of the ordinance, to April 29, 1932, the date of the complaint of fraud, etc., and then allow the presentation of a defense to the assessment, as here presented, would be wholly incompatible with the due process of law which the statutes afford.

We are unable to find favorably on any of plaintiffs in error's contentions on this appeal; they are overruled, and the *judgment of the lower court is affirmed.*

Affirmed.