## CITY OF DALLAS v. COFFIN et ux.

No. 10081.

Court of Civil Appeals of Texas. Austin.

Jan. 7, 1953.

Rehearing Denied Jan. 28, 1953.

H. P. Kucera and H. Louis Nichols, Dallas, for appellant.

Frank Cusack, Dallas, for appellees.

GRAY, Justice.

In this suit brought against appellant, appellees prayed for an injunction restraining appellant from interfering with the use of land as that right existed prior to August 2, 1948. Appellees also prayed that an order of the Board of Adjustment of the City of Dallas made August 2, 1948, be removed as a cloud on their title.

The land in question was at all times pertinent here within the corporate limits of the City of Dallas. It was acquired by appellees April 25, 1949, by general warranty deed from I. H. McVey and wife, who had acquired the same in May, 1945.

The order of the Board of Adjustment here complained of is:

"Be It Remembered that on the 28th day of June, 1948, after lawful notice had been duly given as provided by the Charter and Ordinances of the City of Dallas, came on to be heard the application of I. H. McVey, requesting the Board of Adjustment to issue to him an extension of the permit or a new permit on a temporary basis to occupy a tract of land zoned as Single Family Dwelling R–7.5, as a trailer camp;

"Said tract of land being described as follows:

"All that certain lot, tract or parcel of land lying and being situated in the City of Dallas, Dallas County, Texas, described as follows, to-wit: * * *. (Description omitted.)

"At such hearing the applicant, I. H. McVey, proposed to the Board that if he were granted a temporary permit for such use of said tract of land for a period of five (5) years, that he would thereby be enabled to completely amortize his investment at such location, and that at the end of such five (5) year period he would voluntarily relinquish and abandon the use of said property as a trailer camp and immediately restore it to the use for which it is zoned, to-wit, Single Family Dwelling R–7.5;

"The Board of Adjustment, after having heard all interested parties on the question of the use of such property is of the opinion and so finds that a period of five (5) years is sufficient to enable this applicant to completely amortize his investment in the improvements on the said tract of land in question, and that it is in the best interest of the public safety, health and welfare that the use of said property be restored to that of Single Family Dwelling R–7.5, as provided by the Zoning Ordinance of the City of Dallas, at a date not later than five (5) years from June 28, 1948;

"Wherefore, upon the filing in the Deed Records of Dallas County, Texas, by the said applicant, I. H. McVey, of a duly executed and acknowledged written agreement to completely eliminate, abandon and remove the trailer

camp now located on said tract of land and to restore said tract of land to a use permitted in a Single Family Dwelling District R–7.5, as authorized by the Zoning Ordinance of the City of Dallas, on or before five (5) years from and after June 28, 1948, that is, said elimination, abandonment and restoration shall occur on or before the 28th day of June, 1953, the Building Inspector of the City of Dallas is hereby authorized to issue to the said applicant a temporary permit to expire on the 28th of June, 1953, for the use of said tract of land by the said I. H. McVey, and no other person other than his heirs or legal representatives in case of his demise, as a trailer camp as same is now being used, that is, no extension of said present and past use hereby being permitted other than reasonable repair and upkeep of existing buildings and improvements thereon;

"It is further ordered by said Board that a certified copy of this order shall also be recorded by the applicant, I. H. McVey, together with his hereinbefore described instrument of elimination, abandonment, removal and restoration, concerning the use of said property, in the Deed Records of Dallas County, Texas, so as to give notice of this order and the restrictions placed upon said property and the agreements affecting the same;

"It is ordered by the Board of Adjustment that in the event the said applicant, I. H. McVey, fails or refuses to enter his written acceptance and a copy of this order as hereinbefore provided, within thirty days from the date of this order, this order of the Board of Adjustment granting said temporary permit for the use of said tract of land as a trailer camp is hereby rescinded and the permit as requested in application No. 4502 is in all things denied.

"3.

"It is further understood that if Mr. McVey should extend the operation of this trailer camp beyond the property

limits defined herein that such use of land other than described herein would be grounds for bringing this matter back before the Board of Adjustment for consideration of the cancellation of this non-conforming permit.

"Done this the 2nd day of August, 1948, at a regular meeting hereof."

The above order was filed for record in the deed records of Dallas County on October 23, 1948. It was duly recorded and, by letter from his attorney, I. H. McVey notified the Board of his acceptance of the order, and also enclosed a copy of such acceptance.

Prior to the order I. H. McVey had operated a trailer camp on the entire property, and after the order continued to operate the camp until the property was sold to appellees. Both McVey and appellant treated the order as a full settlement of the dispute existing prior to August 2, 1948.

The land in question is a tract fronting approximately 300 feet on Southerland Avenue in the City of Dallas and has a depth back from the avenue of approximately 300 feet. Prior to July, 1945, the front 150 feet of the tract was zoned local retail with the remainder of the tract zoned for single family residential purposes. In July, 1945, the entire tract was zoned for single family residential purposes.

It is admitted that the operation of a trailer camp on the tract of land is a nonconforming use.

The only zoning ordinance or order in controversy here is the order of August 2, 1948, supra.

Appellee, A. T. Coffin, purchased the property for the purpose of operating a trailer camp thereon, and said that at the time he was negotiating the purchase I. H. McVey told him that he (McVey) had a permit to operate a trailer camp on the property for five years and that the license had to be renewed every year. A. T. Coffin said that he did not remember being told anything about the use of the property being limited until 1953; that McVey told him:

"* * * 'They (the Board of Adjustment) have been giving me all kinds of trouble here and if they should give you any trouble let me know and I will be glad to go down there and be a witness for you.'

"Q. And Mr. McVey said you would get a five-year license, is that right? A. He said the permit was issued for five years.

"Q. Which permit was he talking about? A. The permit to operate the park and the license had to be renewed each year."

"Q. Do you know how long Mr. McVey had been operating that trailer court? A. I don't know definitely. I think he had been operating it—he got his permit, I think, on May 5, 1945. I don't know how long he had been operating it before he got his permit, if any."

On cross-examination A. T. Coffin said: "Q. (By Mr. Nichols) Mr. Coffin, from whom did you first hear about this five-year agreement, or Order of the Board? A. McVey told me, in talking—when I was talking with him, that they would give a year-year permit and would get that permit extended every five years at expiration.

"Q. And so the first time you knew about it was when Mr. McVey told you? A. To that effect.

"Q. And that was before you bought the property? A. Yeah."

However at other places in his testimony he said that the first he knew of the order was after he purchased the property. He said that prior to his purchase he did not check to see what kind of a license McVey had; that within a few days after his purchase he went to the City Hall to see about his water deposit and that Major Wood told him about the order and testified:

"Q. A few days; what did Major Wood tell you? A. He told me that there was an order against the property and that it was on record there in their office.

"Q. What did you tell him? A. Well, I just told him that was the way it was, if he had it that way that was all there was to it. I had not had any information to the effect—".

Thereafter Coffin secured annual licenses for the operation of a trailer camp on the property and did operate it.

The testimony of I. H. McVey in a large measure contradicts that of A. T. Coffin but we think it is not necessary to set it out.

Appellees secured a policy of title insurance but the order, supra, was not shown in this policy and it was not mentioned in appellees' deed.

Upon a nonjury trial a judgment was rendered that the order, supra, was of no force and effect; that it had expired by its own terms; that said order and its acceptance by McVey was void and of no effect, and removing the order as a cloud upon appellees' title.

Findings of fact and conclusions of law were not requested and none were filed.

■ It is well established in this State that a person, even though he is a nonresident, who deals with property within the limits of an incorporated city is charged with notice of ordinances of the city regulating the use of such property. Heisig v. Vaughn & Gardner, Tex.Civ.App., 15 S. W.2d 113. error ref.; Johnson v. City of Dallas, Tex.Civ.App., 78 S.W.2d 265, error ref.

■ The use of the property in question was limited in 1945 to single family residential purpose. Admittedly the operation of a trailer camp on the property was a nonconforming use. Appellee, A. T. Coffin, before and at the time of his purchase knew that McVey had been and was then operating a trailer camp on the property. He also knew that such operation was under a permit authorizing a use not authorized by ordinance, the existence of which he was charged with notice. He purchased the property with the view and for the purpose of operating a trailer camp thereon. He was told by McVey that the operation of the trailer camp was under a

five-year permit, but made no further investigation and no inquiry as to the expiration date of such permit. This situation and these facts were sufficient to put the purchaser of the property (especially a purchaser who desired to continue a nonconforming use) upon inquiry as to the authority for the nonconforming use and as to how the use could be carried on in the future, or in this case beyond the expiration of the five year permit. Uvalde Co. v. Tribble, Tex.Civ.App., 292 S.W. 932, error dism., Tribble v. Uvalde Co., Tex.Com. App., 300 S.W. 23. Spencer v. Maverick, Tex.Civ.App., 146 S.W. 819.

The reasonable course for A. T. Coffin to have pursued was to make inquiry at the office of the city where the records were kept. These records were available to him and were as accessible as the county records. If he had made inquiry at the city office prior to his purchase he could have obtained the same information that he received after his purchase. These facts would have been revealed to A. T. Coffin irrespective of the description of the land contained in the order complained of. Moreover no inquiry or investigation having been made prior to the purchase, Coffin was not misled by the description of the land contained in the order. We think it not necessary to labor the question of the sufficiency of the description of the land as is there set out. (There is no question before us as to whether or not I. H. McVey contracted to convey a title free of encumbrances or that he contracted to convey a merchantable title.)

We hold that the facts before us were sufficient to put appellee Coffin on inquiry and to charge him with notice of what that inquiry would have revealed—the order here complained of. 31 Tex.Jur. p. 365, Sec. 5.

Appellees say that the Board functions as a quasi judicial body and that its orders have the effect of judgments. They did not allege, and do not say, that the order was recorded in the deed records of Dallas County and accepted by McVey and the Board as the result of fraud, accident or mistake or by reason of bad faith on the part of either.

I. H. McVey accepted the order in settlement of his dispute and so notified the Board. This is shown by the record and also by his testimony. Appellees applied for and received licenses (for the years 1949–1950; 1950–1951, and 1951–1952) for the operation of a trailer camp on the land, and have operated such camp. Except for the order the licenses were not authorized under the existing ordinance effective against the land. Thus appellees, having invoked the order for the purpose of securing licenses and having enjoyed the benefits of it, are now estopped to deny its legality. Lowe v. Johnson, Tex.Civ. App., 259 S.W. 1004, error dism.; 49 C.J. S., Judgments, § 453, p. 884; 17 Tex.Jur. p. 135, Sec. 7.

Appellees say that the order of the Board is void because it was not recorded in the deed records of Dallas County within thirty days from its date. For the reasons already stated we think this contention cannot be sustained.

Appellees insist that because the order was not filed in the deed records of Dallas County within thirty days from its date the permit was denied. In Peterman v. Peterman, Tex.Civ.App., 55 S.W.2d 1108, 1110, error dism., the Court said:

"If the judgment as respects the fixing of property rights, the contribution, etc., for the support of the child be regarded, as apparently it should be, as a judgment by consent, nevertheless, as said in 34 C.J., p. 133, § 337: ' * * * It has the same force and effect as any other judgment, and in the absence of fraud or mistake is valid and binding, as such, as between the parties thereto and their privies, and is not invalidated by a subsequent failure to perform a condition on which the consent was based, * * * and unless it is vacated or set aside in the manner provided for by law, it stands as a final disposition of the rights of the parties thereto. In the absence of fraud after the agreement has been made and a judgment entered thereon, the consent of one of the parties cannot be withdrawn. * * * ' "

Also, Routon v. Phillips, Tex.Civ.App., 246 S.W.2d 223, error ref. n.r.e. 10 Tex.Jur., 427, Sec. 245, and p. 462, Sec. 268.

We think appellees were not entitled to have the order of the Board removed as a cloud on their title.

The judgment of the trial court is reversed and judgment is here rendered that appellees take nothing.

Reversed and rendered.