Lovell E. **KELLEY**, et al., Appellants,

v.

Herbert Lynn **HUDSON**, et ux, et al., Appellees.

No. 12–81–0152–CV.

Court of Appeals of Texas, Tyler.

Nov. 24, 1982.

Tom Bankhead, Bankhead & Davis, Carthage, for appellants.

Rick McPherson, Parker & McPherson, Carthage, for appellees.

RAMEY, Justice.

This is an appeal from a temporary injunction prohibiting appellants from using property, restricted to single family dwellings, for commercial purposes in violation of a restrictive covenant. An overview of the facts is presented for an understanding of this case.

A plat of a 13.997 acre tract in Carthage, Texas, referred to as "Daniels Estates," was completed on behalf of real estate developer, Lovell E. Kelley ("Kelley"), on May 9, 1977. On the same day he deeded this entire acreage to Lovell E. Kelley, Inc. ("Corporation"), of which Kelley is president and his wife Sarah is secretary. Thereafter on May 31, 1977, Kelley obtained approval of the Daniels Estates subdivision by the Carthage Planning and Zoning Commission based upon a plat which showed 26 lots, including the lot subsequently conveyed to Herbert L. Hudson ("Hudson") and wife, Ada L. Hudson, appellees. This Commission also approved restrictive covenants signed by Kelley and his wife. The covenant in question reads as follows:

1. Each and every lot of said Subdivision shall be known, used and described as lots for residential purposes only and no structures shall be erected, altered, placed or permitted to remain on any such residential lot other than one family residences. Such lots shall not be used for business purposes, manufacturing or apartment house purpose.

On June 8, 1977, Corporation deeded to Hudson and his wife the lot ("Lot 1") in the Daniels Estates Subdivision, describing it by metes and bounds, and reciting a covenant stating, "The conveyance of the above property is subject to the restriction and covenant that the property above described shall be used for residential purposes." On June 13, 1977, the Carthage City Commission tentatively approved "Daniels Estates" and finally approved this said subdivision twenty months later on February 26, 1979, after streets and utilities were in place. On March 2, 1979, Kelley filed the restrictive covenants and plat for recordation with the County Clerk of Panola County.

Over two years after filing the said instruments, on April 29, 1981, Kelley entered into an option contract with Dominion Property Company No. 3 ("Dominion") whereby Dominion would pay $21,200 per acre for 12.5 acres of the original Daniels Estates Subdivision for development as a shopping center; Kelley valued this same property at from four to five thousand dollars per acre if used for residential purposes. This property included part of lot 9 and all of lots 10–21 of the original plat of the subdivision.

Thereafter, Kelley's efforts concerning the subdivision were directed toward elimination of the residential use restriction as it affected the 12.5 acre Dominion tract. In May 1981 Kelley requested that the Hudsons sign a replat designating a new subdivision of only 14 lots, including that owned by Hudson. Hudson did not execute the replat dedication. Kelley then sought and obtained the Planning and Zoning Commission's approval of a declaration vacating the old subdivision and of a dedication of a

replat of the subdivision which for the first time omitted the Hudson lot, and of a request to rezone the Dominion 12.5 acres from SF1 (single family) to GB2 (general business). In the vacating declaration Kelley stated, "Since the Dedication and filing of Restrictive Covenants, the said owners, Lovell E. Kelley and wife, Sarah Kelley, have conveyed only one lot which is now owned by Lovell E. Kelley, Inc...." Thereafter, the Carthage City Commission approved the Planning Commission's actions. On June 30, 1981, a declaration vacating the restrictive covenant of the previous Daniels Estates subdivision was filed in the Panola County deed records, signed by Kelley, wife Sarah Kelley, and Lovell E. Kelley as president of the Corporation.

The trial court granted appellees (Hudson and wife) a temporary injunction enforcing the restrictive covenants prohibiting nonresidential use of any portion of the original Daniels Estates Subdivision. The other plaintiffs below, Ken and Wilda Turner, were not included in the injunctive relief. We affirm the order granting the temporary injunction to the Hudsons.

Appellants' basis for appeal concerns the validity of their own restrictions placed on the original Daniels Estates Subdivision and the appellees' right to invoke them. Citing *Fleming v. Adams,* 392 S.W.2d 491 (Tex.Civ. App.—Houston 1965, ref'd n.r.e.), they assert that the restrictions were equitable servitudes which required a dominant and servient estate, and a writing to satisfy the Statute of Frauds.

Appellants' first point of error is that the original dedication of the subdivision and the restrictive covenants were invalid; it is claimed that since the Corporation had title to the land, only the Corporation could make the dedication. *Gladwater Lumber & Supply Co., et al v. City of Gladwater,* 87 S.W.2d 527 (Tex.Civ.App.—Texarkana 1935, no writ).

Kelley would, in effect, rely upon his own failure to respect the separate identities of his Corporation and himself, individually, as the basis for the invalidity of the original subdivision plat and the attempt to impose

the deed restrictions. In this record Kelley and his wife were the only officers of the Corporation; there is no indication that anyone other than the Kelleys had any interest in nor exercised any control over that entity.

Although the conveyance of the property in question to the Corporation was dated May 19, 1977, there is no suggestion in the minutes of the Planning and Zoning Commission on May 31, 1977, or the Carthage City Commission on June 13, 1977, that Kelley was appearing on behalf of the Corporation. The same was true at the time of the City Commission's final approval on February 26, 1979.

The restrictive covenants create even greater confusion as between Kelley and his Corporation. These restrictions were initially filed with the appropriate City bodies in 1977. Although the record is not clear in this respect, apparently the identical covenants were filed then as were filed in the deed records on March 2, 1979; the identical plat was filed by Kelley in 1977 as was filed in 1979; the said plat and the restrictive covenants were filed simultaneously in 1979. As appellants urge, the restrictive covenants were filed not by the Corporation but by Kelley and his wife individually. Yet, this instrument contains the specific recitation that the Kelleys individually owned the subdivision in 1979 (and presumably in 1977). Finally, on May 20, 1981, in their "Declaration Vacating Daniels Estates and Restrictive Covenants" the Kelleys affirmatively represented to the Planning and Zoning Commission and the Carthage City Commission that they individually were the owners of the property in question with the exception of one lot which had been conveyed to the Corporation.[1] On the same date in his Application to the Planning and Zoning Board to Rezone, Kelley stated under oath that he individually owned the property to be rezoned; the Corporation was not mentioned.

Therefore, appellants rely solely upon corporate ownership of the subdivision to invalidate Kelley's own plan of restricted subdivision use, although the ownership of the subdivision was unclear and uncertain. This lack of separateness and resulting confusion as between Kelleys' individual activities and those conducted on behalf of the Corporation is compounded by the fact that at all material times both engaged in precisely the same type of business endeavor: development of property for residential and business use.

In the light of this confusion and lack of separateness as between Kelley and his Corporation, it is our view that it would be unjust to deny the Hudsons relief resulting from Kelley's failure to distinguish between his acts in his individual capacity and those of the Corporation. As a general rule the corporate entity will not be disregarded by the courts. *Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 351 (1955). A recognized exception to that rule is the situation in which a corporation has lost its separateness, and adherence to that legal fiction would promote injustice. *First National Bank in Canyon v. Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103–105 (Tex.1939); *Petty v. Ferguson,* 601 S.W.2d 782, 785 (Tex.Civ.App.—Fort Worth 1980, dism. w.o. j.). Hudson was well aware of the plat and restrictions at the time he purchased Lot 1; as mentioned, his deed contained a specific residential use restriction. In reliance thereon he built his home, a swimming pool and other amenities he values at $150,-000.00. This property would be situated only 200 feet from the proposed shopping center which is in direct contravention of appellants' restrictions designed to enhance the value of both parties' property. In this injunctive proceeding equity will look behind the corporate entity when it becomes necessary to do so to avoid an inequitable result. Specifically, this rule is invoked when dealing with corporations and corporate affairs. *Landa v. Whitfield,* 131

---

1. Kelley built a house on the one lot conveyed to the corporation; it is across the street from Hudson's house.

S.W.2d 310, 312 (Tex.Civ.App.—San Antonio 1939, writ ref'd).

In this point appellants further assert that any testimony concerning Kelley's representations as to the restricted nature of the subdivision cannot create a servitude on real property for they were in violation of the Statute of Frauds. Tex.Bus. & Com. Code Ann. art. 26.01 (Vernon 1968). The aforementioned original plat and the duly acknowledged restrictive covenants in combination therewith, as well as the deed to Hudson, upon all of which appellees rely, were instruments in writing and satisfied the Statute of Frauds. *Lehmann v. Wallace,* 510 S.W.2d 675, 682 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). Furthermore, since the restrictive covenants specifically referred to the plat, the Statute of Frauds is satisfied by these two instruments which may be considered in combination. *McElroy et al v. Danciger,* 241 S.W. 1098, 1102 (Tex.Civ.App.—Amarillo 1922, no writ); *Callahan v. Walsh,* 49 S.W.2d 945, 947 (Tex.Civ.App.—San Antonio, 1932, writ ref'd). We overrule appellants' first point of error.

■ Appellants' second point is that the appellees were not owners of a dominant estate entitled to enforce the nonresidential use servitude. This contention is predicated upon the claim that the Hudson lot was outside the Daniels Estates Subdivision. It is argued that Hudson had no standing to enforce the restriction because he acquired his property in 1977, at which time the plat and the restrictions had not been finally approved. We cannot agree.

Prior to the sale of the Hudson lot on June 8, 1977, it is undisputed that Kelley had commenced his neighborhood plan to restrict the lots in the Daniels Subdivision to residential use. This is confirmed by the preparation of the plat of this subdivision, his filing of the plat and the restrictive covenants and urging their approval by the Carthage City Planning and Zoning Commission, all of which occurred prior to the conveyance to Hudson. The deed to Hud-

son recited its restricted use. In this connection appellants' position must be that the Hudson lot is a single isolated plot of land burdened with a residential use restriction; they apparently contend that no other lot in the 13.997 acre tract is validly restricted in this respect. Curiously Hudson paid an unusually high price for his fettered homesite.[2] Hudson testified that Kelley's plat was used by him in selecting Lot 1 and that Kelley assured him that the homes in that subdivision would exceed a certain minimum size and value and that there would be no commercial use of the property in that specific area. Consistent with Kelley's restrictions, Hudson submitted his house plans to Kelley who reviewed and approved them before Hudson's house was commenced on Lot 1.

There is additional persuasive proof that Hudson's lot was a part of the Daniels Estates Subdivision. First, it is undisputed that the lot purchased by Hudson is denominated Lot 1 in the original plat of the subdivision prepared by Kelley's surveyor. Approval of this very plat by the Planning Commission and the Carthage City Commission was secured by Kelley himself. The same plat which included Hudson's lot as a part of the subdivision was finally approved by the City Commission on February 26, 1979, and then filed by appellant Kelley in the Panola County Deed Records on March 2, 1979.

More than two years later, in May 1981, Kelley recognized that Lot 1 was indeed a part of the subdivision. Kelley visited with Hudson on several occasions for the express purpose of securing the latter's approval of the replatting of the subdivision and vacation of the restrictive covenants as to the Dominion 12.5 acre tract. At that time Kelley arranged for a registered surveyor to replat the addition wherein Hudson's lot is once again specifically shown to be a part thereof. Thus, Kelley himself, at least until Hudson did not join in the release of the restrictive covenants, continually over a four year period of time acknowledged that

---

**2.** Hudson paid $10,000 for his .653 acre lot; Kelley testified that these lots had a reasonable market value of from four to five thousand dollars per acre.

the lot owned by Mr. Hudson was situated in and a part of the Daniels Estates Subdivision. Under these circumstances Kelley cannot now successfully contend in this equity proceeding that Hudson did not purchase a lot in the Daniels Estate Subdivision.

■ Appellants urge in their third point of error that the plat of the Daniels Estate Addition was not legal evidence upon which the trial court could issue a temporary injunction. Specifically, it is argued that the plat was not executed nor acknowledged by the owner and was not endorsed with the approval of the Carthage City Commission, and that it, therefore, was invalid. Tex. Rev.Civ.Stat.Ann. art. 974a §§ 2, 4. We disagree.

It is noted at the outset that appellant's claim that the plat is invalid is based upon a defect that occurred some two years after the plat's preparation. There is no challenge to the correctness of the original plat nor as to its approval by the appropriate city authorities. Appellant's objection relates solely to the absence of certain supplementary inscriptions and endorsements on the plat. Their only purpose was to render the plat recordable in the county deed records. *Hollis v. Parkland Corp.,* 120 Tex. 531, 40 S.W.2d 53, 56 (1931). The plat was in fact offered for recordation and filed by the County Clerk after final approval by the City Commission. Thus, the defect complained about did not occur until nearly two years after this very plat and covenants had been relied upon by Hudson in purchasing his lot and making expensive improvements thereon.

We are furthermore of the opinion that such formal defects should not invalidate the approved plat; certainly this is the case as against the party who sponsored the instrument. The claimed defects were Kelley's omission. He intentionally and purposefully restricted the use of the subdivision property to enhance its value to himself as recited in his restricted covenants; he enjoyed the fruits thereof; he cannot now successfully challenge the validity of those restrictions. *Crawford v. Thomas,*

229 S.W.2d 80 (Tex.Civ.App.—Waco 1950, writ ref'd); *City of Dallas v. Coffin,* 254 S.W.2d 203 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.). Equity jurisdiction does not countenance one asserting his rights under a technical rule of law or attempting to take advantage of his own mistake. *Sigel v. Buccaneer Hotel Co.,* 40 S.W.2d 168, 173, 174 (Tex.Civ.App.—Galveston 1931, writ ref'd). In passing it is also to be noted that the contention concerning this third point of error is inconsistent with Kelley's elaborate efforts to have the plat vacated and replatted and the restrictive covenants released in 1981; no purpose would be served by vacating an invalid plat.

■ Appellants also claim that the plat did not satisfy the Statute of Frauds because it was not executed nor acknowledged. Tex.Bus. & Com.Code Ann. art. 26.-01 (Vernon 1968). It has long been held that a dedication, as in a plat, need not be in writing and need not satisfy the Statute of Frauds. *Menczer v. Poage,* 55 Tex.Civ. App. 415, 118 S.W. 863, 866 (1909, no writ); *Santa Fe Town-Site Co. v. Parker,* 194 S.W. 487, 489 (Tex.Civ.App.—Beaumont 1917, no writ).

■ The only question before the court in a temporary injunction hearing is the applicant's right to preserve the status quo of the subject matter of the suit until the matter may be tried on its merits. The applicant is required only to show a probable right and a probable injury; it is not necessary to establish that he will ultimately prevail. *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953). We hold that the appellees have demonstrated the necessary requisites.

The trial court's temporary injunction is affirmed.